CAROLINE M. HUBBARD, executrix, *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Berkshire.   September 11, 1894. — October 17, 1894.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Railroad Accident — Grade Crossing — Precautions other than Statutory — Gate or Flagman — Due Care — Negligence.*

If, at the trial of an action for damages for the loss of life of the plaintiff's testator by being struck by the defendant's train at the crossing of a highway by the defendant's railroad, it appears that there were circumstances from which the jury might have found that the testator was negligent in not waiting longer before starting after a freight train had passed, so that he could more effectually use his ears in a place where his eyes could not avail him, and that, on the other hand, there was much to excuse, if not justify, his conduct, the court cannot say, as matter of law, that he was negligent, but it is for the jury to determine whether he was in the exercise of reasonable care.

In order to find negligence on the part of a railroad corporation in not taking other precautions at crossings than sounding the whistle and ringing the bell, as required by statute, to warn travellers of the approach of trains, there must be evidence beyond the fact that there is a public way crossed by a railroad at grade ; and where, in an action for damages for the loss of life of the plaintiff's testator by being struck by the defendant's train at the crossing, the bill of exceptions disclosed nothing in regard to the amount of travel on the highway, which, on account of the location of the crossing and its surroundings, was the question which would determine whether extra precautions were necessary or not, and it appeared that the crossing was within a few feet of the railroad station, and the jury, in the view which they took, had an opportunity of judging from the appearance of the road and of the adjacent country how much the road was travelled, it cannot be said, as matter of law, that they erred in finding a gate or flagman necessary.

TORT, by the executrix of the will of William L. Hubbard,. for causing his death at a crossing at grade in Richmond by the railroad tracks of the defendant.    At the trial in the Superior Court, before *Richardson*, J., the defendant at the close of the evidence requested the judge to direct a verdict for the defendant.    The judge declined so to do, and submitted the case to the jury upon the issue whether or not the defendant was guilty of negligence in not having at the crossing a flagman, gate, or some other method to warn travellers of danger, and upon the issue whether or not the deceased was in the exercise of due care.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.    The material facts appear in the opinion.    The case was formerly reported 159 Mass. 320.

*M. Wilcox*, (*C. E. Hibbard* with him,) for the defendant.

*J. F. Noxon*, for the plaintiff.

KNOWLTON, J.    This bill of exceptions presents two questions : first, whether there was evidence that the plaintiff's testator was in the exercise of due care; secondly, whether there was evidence of negligence on the part of the defendant in failing to provide a gate or a flagman at the crossing to warn travellers of the approach of trains.

The place where the accident happened was exceedingly dangerous.    The railroad at that point runs nearly northeast and southwest, and the plaintiff's testator was driving northerly on the highway which crosses the railroad at an angle of forty degrees.    On the westerly side of the highway, extending up to within nine feet of the southerly track, is a ledge of rocks such as to make it impossible for a traveller going northward on the

highway to see a train approaching from the west until he gets almost to the crossing. The testimony shows that a person standing in the highway twenty feet south of the south rail, looking westerly across the north end of the ledge of rocks, could see one hundred and fifty-nine feet of the track next west of the crossing, and one standing fifteen feet south of the south rail could see three hundred and fifty feet of the track next west of the crossing. From that point to a point more than one hundred feet south of the southerly track, and for the greater part of the way to a point three hundred feet southward, no part of the tracks to the westward could be seen. A long freight train was passing over the crossing to the westward on the northerly track, and the plaintiff's testator, who was driving in a lumber wagon, stopped his horse about one hundred feet southward of the southerly track and waited for it to go by. Soon after the last car had gone over the crossing, he started at a slow trot to go across. He was standing in his wagon looking to the westward, but on account of the obstructions it was impossible for him to see the train approaching from that direction. The intervening ledge may have somewhat interfered with the passage of sound of the coming train, and there was doubtless noise from the receding freight cars; so that, while the evidence tends to show that he both looked and listened, he was evidently unaware of the approach of the express train from the west until his horse was on or very near the track. The jury might well have found that he was negligent in not waiting longer before starting after the freight train went by, so that he could more effectually use his ears in a place where his eyes could not avail him. On the other hand, there is much to excuse, if not to justify, his conduct. Very likely it was his first experience of the passage of a long train before him when he was about to cross a railroad. He may have supposed that he would hear the coming train if it was near. Waiting longer in that place would not have enabled him to see whether a train was coming. To have stopped near enough to the track to be able to see along it for any considerable distance would have brought his horse so near as to expose him to great danger from the fright of the horse if a train should chance to come. Under the circumstances of this case we cannot say, as matter of law, that he was negligent, but

we are of opinion that it was for the jury to determine whether he was in the exercise of reasonable care.

While the case of *Fletcher* v. *Fitchburg Railroad*, 149 Mass. 127, resembles this in some particulars, in others it materially differs from it. There the plaintiff drove upon the track without excuse when his view of the adjacent track, on which he had reason to expect a passenger train at that hour, was cut off by the intervening cars of a receding freight train, which would have left him an unobstructed view before reaching the place of danger if he had waited half a minute for it to get away.

The jury were permitted to find that the defendant was negligent in not taking other precautions than sounding the whistle and ringing the bell to warn travellers of the approach of trains. It is well settled in this Commonwealth that the requirements of the Pub. Sts. c. 112, §§ 163, 164, in regard to the erection of signboards and the sounding of the whistle and the ringing of the bell of locomotive engines at crossings, are not exclusive of other provisions for the protection of the public where these are not sufficient to provide reasonably for their safety, and that it is the duty of a railroad corporation to erect gates or station a flagman at a crossing if the security of the public reasonably requires it, even though no request in regard to it has been made by the mayor and aldermen or selectmen, and no order by the county commissioners under the provision of Pub. Sts. c. 112, § 166. *Eaton* v. *Fitchburg Railroad*, 129 Mass. 364, and cases cited. A similar rule of law prevails in other States. *Richardson* v. *New York Central Railroad*, 45 N. Y. 846. *Pennsylvania Railroad* v. *Matthews*, 7 Vroom, 531. *Chicago & Eastern Illinois Railroad* v. *Boggs*, 101 Ind. 522.

Ordinarily, it is a question of fact for the jury to determine in each particular case whether the warnings imperatively required by the statute to protect the public at railroad crossings are sufficient for that purpose, or whether additional precautions for their safety are necessary. But in order to authorize a jury to find negligence in not taking such additional precautions, there must be evidence beyond the mere fact that there is a public way crossed by a railroad at grade. There must be something in the configuration of the land, or in the construction of the railroad, or in the structures in the vicinity, or in the nature

or amount of the travel on the highway, or in other condi-
tions, which renders ringing the bell and sounding the whistle
inadequate properly to warn the public of danger. Evidence
that daily twenty trains on a road and about as many vehicles
on a highway passed over a place where the railroad crossed the
highway at grade, but was in full view of the highway at any
point within one hundred and fifty feet of the crossing, and
where the public authorities never required the establishment
of a gate or flagman, has been held to be insufficient to warrant
a finding that the railroad corporation was guilty of negligence
in omitting to provide there such a safeguard. *Commonwealth* v.
*Boston & Worcester Railroad*, 101 Mass. 201.

The crossing in the present case for persons travelling north-
ward on the highway was very dangerous. For a considerable
distance before reaching the crossing one would be obliged to
depend wholly on his sense of hearing to discover whether a
train was approaching. There are very few horses that can
safely be stopped within fifteen or twenty feet of a railroad
track to await the passage of an express train. One driving
there before the accident was obliged to choose between the risk
of driving across and being struck by an express train whose
approach he might fail to hear, and the risk of stopping to look·
so near the track as to expose him to great danger from the
fright of his horse if an approaching train should be near. If
this highway was a great thoroughfare we think it clear that
other precautions were needed. On the other hand, if there
was but little travel over it, ringing the bell and sounding
the whistle may have been all that was reasonably necessary.
The bill of exceptions discloses nothing in regard to the amount
of travel on the road, but it appears that the crossing was within
a few feet of the railroad station in Richmond, and the jury, in
the view which they took, had opportunities of judging from the
appearance of the road and of the adjacent country how much
the road was travelled. We cannot say, as matter of law, that
they erred in finding a gate or flagman to be necessary.

If it is deemed best that railroad corporations shall be free
from obligation to maintain a gate or to station a flagman at
any crossing unless ordered or requested so to do by the public
authorities under the statutes, it will be easy for the Legislature
to pass a law to that effect.                    *Exceptions overruled.*