WILLIAM B. ALLEN *vs.* BOSTON AND MAINE RAILROAD.

Essex.     November 7, 1907. — February 26, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence*, Railroad, In use of highway.

At the trial of an action of tort against a railroad company to recover for personal injuries received by the plaintiff by reason of a collision between an ice wagon which he was driving and a train of the defendant at a grade crossing of the railroad with the highway, it appeared that, at a distance of twenty-five feet from the crossing, there was a clear view of the track in the direction from which the train came for seven hundred and sixty-six feet, that the accident happened about noon on a clear day in May, that previous to the collision the plaintiff had been driving the ice wagon for about four hundred feet in a highway nearly parallel to and near to the railroad track from the same direction from which the train approached, that the wagon was partly filled with ice and was covered so that the plaintiff could see in no direction excepting in front unless he leaned forward from his seat. The plaintiff testified that, when about twenty-five feet from the crossing, he leaned forward and looked up the track in the direction from which the train came and saw no train, that he was familiar with the neighborhood and with the crossing, knew that there was a train due about that time but thought that it had passed, that his horses were walking and could have been stopped within ten feet until just as they reached the crossing, when they suddenly broke into a trot, and the train of the defendant, going at

the rate of about twenty miles an hour, struck the wagon. *Held,* that there was no evidence which would warrant the jury in finding that the plaintiff was in the exercise of due care.

Where, at the trial of an action of tort against a railroad company to recover for personal injuries received by the plaintiff by reason of a collision between an ice wagon, which he was driving, and a train of the defendant at a grade crossing of the railroad with a highway, the admitted physical surroundings of the crossing, the time and the atmospheric conditions were such as to show ample opportunity for the plaintiff, who had good eyesight, by looking, to ascertain in time to protect himself from danger whether a train was approaching, it is not enough, in order to furnish evidence sufficient to warrant the submission to the jury of the question whether the plaintiff was in the exercise of due care, for him to say that he looked but failed to see an approaching train.

TORT for personal injuries received by the plaintiff in a collision between an ice cart that he was driving and a train of the defendant at the Marble Ridge grade crossing in North Andover. Writ in the Superior Court for the county of Essex dated July 26, 1906.

There was a trial before *Bell,* J. Besides testifying as stated in the opinion, the plaintiff in cross-examination stated that there were sides to his wagon and the seat was back so that the only view he had, without leaning out around the side, was straight ahead. He admitted, at first, that when he looked as he testified, twenty-five feet from the crossing, all he saw was the crossing straight ahead. He subsequently changed this and testified that when he was twenty-five feet from the crossing he looked around and saw the flagman coming behind him, and that he did not look for a train at that time. Still later he testified that when he was twenty-five feet, and again when he was four feet from the crossing, his looking consisted in simply looking ahead on the crossing. But later still he testified that when he was twenty-five feet from the crossing he did look up the track to see whether a train was coming, but he would not say that at that look he took in more than seventy-five or one hundred feet of track. He also testified that he would not say that, when twenty-five feet from the crossing, he could not have seen seven hundred feet south on the track. He at first stated that at no time from the time he turned the corner at the fence did he lean out of his wagon and look up the track to see how far he could see or whether he could see a train, but later stated that he did look up the track particularly to see whether there was a train coming. He also stated that

when, leaning out and looking back, he saw the flagman running after his team " he thought it would be kind of nice to see him run to catch up with the team and jump on," and that that was in his mind, although the train and his horses were in his mind too.

Other facts are stated in the opinion.

At the close of the evidence, the defendant, among other requests, requested the presiding judge to rule that, upon all the evidence, the jury would not be warranted in finding that the plaintiff was in the exercise of due care. The request was refused and the defendant excepted. The jury found for the plaintiff.

*D. E. Hall*, for the defendant.

*J. P. Sweeney, H. R. Dow & L. S. Cox*, for the plaintiff.

RUGG, J. This is an action of tort for personal injuries received by the plaintiff at a crossing at grade of a highway with a single track branch of the defendant. The plaintiff was driving a pair of gentle easily controlled horses hitched to an ordinary ice cart. He crossed the track of the defendant by an overhead bridge just south of a station of the defendant, and drove down and along the highway, which was an irregular semicircle to the northward, a distance of four hundred seven feet to the grade crossing, which was north of the station. The first half of this distance was a descending grade of five or six per cent, and the two hundred feet lying next to the grade crossing was substantially level. The cart was partially loaded with ice. The plaintiff trotted his horses down the hill, but they walked along the level space until they were at the crossing, when they suddenly broke into a trot, and immediately the wagon was struck by a train coming from the south, and the plaintiff was injured. He is bound to show that he was in the exercise of due care. The accident occurred at about half-past twelve on the afternoon of a bright day in May. There were no other travellers on the highway, except that a flagman of the defendant, one of whose duties was to flag this crossing, according to the plaintiff's testimony was running behind his vehicle.

The plaintiff was familiar with the neighborhood and crossing. He knew a train was due at about the time of the accident, but thought it had passed. There was no dispute that, as one ap-

proached the crossing from the direction in which the plaintiff came, the only obstruction to a view of the tracks to the south, from which the train came, was the station, and that at a point forty-six feet from the crossing in the highway there was a clear view of the tracks southerly measured from the centre of the crossing, three hundred and seven feet; at a distance of thirty feet, a like view for four hundred and two feet; at twenty-five feet, for seven hundred and sixty-six feet; at fifteen feet or nearer, for sixteen hundred and seventy-nine feet. The plaintiff testified that he could easily stop his team on this road, with its load and rate of speed, within ten feet. The only evidence as to the speed of the train was that it was going about twenty miles an hour. The plaintiff testified that he looked for a train at about twenty-five feet from the crossing, but saw none. Upon this state of the evidence it is obvious that the failure of the plaintiff to see the train in time to save himself from danger was due to his own negligence. It was possible for him when he was in a place of safety to have looked down the track a distance far enough to have seen any approaching train. The circumstances do not show anything to distract his attention from the track, nor is any excuse shown for failure to observe that which was within view. Indeed, the noise of his own cart and load, hindering the warning that might otherwise come through his hearing, imposed upon him a greater obligation to actively use his other senses to obtain information for his security. A railroad grade crossing is universally recognized as a place of great danger. While there is no hard and fast rule in this jurisdiction that a traveller approaching such a crossing must invariably stop to look and listen, yet he must actively and intelligently exercise whatever faculties may reasonably be expected to give warning of impending danger. Where the admitted physical surroundings of a crossing, time and atmospheric conditions are such as to show ample opportunity for a traveller to know whether a moving train is near in time to protect himself from danger, it is not enough for him to say that he looked but failed to see an approaching train. The inference is irresistible that such looking is careless. *Roberts* v. *New York, New Haven, & Hartford Railroad,* 175 Mass. 296. *Fitzgerald* v. *Boston Elevated Railway,* 194 Mass. 242. *Beirne* v. *Lawrence &*

*Methuen Street Railway, ante*, 173. A traveller is not obliged to look where sight is so obscured as to afford him no intelligence, nor to listen if conditions are such that there can be no hearing, because under these circumstances he can gain nothing thereby. But when sight or hearing will tend to give information which can be utilized for his safety, then he must use these faculties.

The undisputed circumstances of the present case show that if the plaintiff had exercised ordinary precaution he might have seen the approaching train in time to avoid harm. His failure to do so made it the duty of the trial court to grant the second prayer of the defendant. *Raymond* v. *New York, New Haven, & Hartford Railroad*, 182 Mass. 337. *Hamblin* v. *New York, New Haven, & Hartford Railroad*, 195 Mass. 555. Cases like *Manley* v. *Boston & Maine Railroad*, 159 Mass. 493, where the burden rests upon the defendant to prove gross negligence on the part of the traveller, have no bearing upon the present case.

*Exceptions sustained.*