Cunningham, J.
While plaintiff was crossing the intersection of Larimer and Seventeenth' Streets, in the city and county of Denver, on a bicycle, a team belonging to the defendant, and driven by an employee, ran upon him, resulting in serious personal injuries to plaintiff, and damage to his wheel. On a second trial of the cause the jury returned a verdict of $1675. The first jury disagreed. Hnder the evi *584 deuce the amount of the verdict was conservative, if plaintiff was entitled to recover at all. Plaintiff plead and introduced a speed ordinance which he alleged, and the jury specially found, was violated by defendant’s driver, at the time of the accident. The competency and materiality of such ordinances in cases of this character, (especially where they provide a penalty only for their violation) has been challénged by counsel for defendant, who contend (a) that they may not be admitted for any purpose (b) if admitted their violation does not constitute negligence per se (c) that civil liability may not be imputed to the master for the violation of the ordinance by his servant.
1. All these contentions have been elaborately and ably presented by counsel for defendant in briefs and on oral argument. The ordinance before us in this case reads as follows, in part:
“It shall be unlawful for any person in charge of any vehicle within the district # * * to drive at a rate of speed greater than eight miles per hour, or without said district to pass any street intersection or turn any corner when any person or vehicle is near, or on any such intersection or corner, at a rate of speed greater than four miles per hour. ’ ’
Defendant contends that by its scope this ordinance is limited in its application to the person in actual charge of the vehicle, while plaintiff contends for the doctrine of respondeat superior. Writing on this subject, Judge Thompson, in Mol. 1, Sec. 520, of his Commentaries on the Law of Negligence, says:
“It is scarcely necessary to say that the rule of respondeat superior operates to charge masters *585 in the case where the act done by the servant is prohibited by statute, so as to become under principles elsewhere' discussed, negligence per se, as well as to cases where the act of the servants amounts to negligence under the principles of common law. ’ ’
This statement of the law by Thompson is characterized by counsel for appellant as, “dicta, which, however, has not one single case to support it.” In the case of Denver, etc. R. R. Co. v. Ryan, 17 Colo. 98-100, Mr. Justice Elliott, speaking for the court, says:
“So, too, the jury were correctly charged that if they were satisfied from the evidence that the defendant company had failed to comply with said ordinances, or either of them, at the time of the accident, that such failure was negligence on the part of the defendant.”
One of the ordinances under consideration in the Ryan case reads as follows, in part:
“It shall be the duty of the engineer or other person in charge of any locomotive engine within the city of Denver, on approaching any public crossing or highway, to ring the locomotive bell sufficiently loud to warn all persons of the approach of such locomotive engine. * * * For every violation of this section, the offender shall, upon conviction, be fined in a sum not exceeding $100 for each and every offense.”
The ordinance before us, and the one under consideration in the Ryan case, do not essentially differ. Referring to the Ryan case., counsel for appellant say that the question of respondeat superior was not even considered. We have quoted enough from the opinion, we believe, to show that it was at *586 least passed upon. If the announcement of our own Supreme Court in the Ryan case, and the statements of Judge Thompson be, as counsel contend, dicta, they are at least entitled to great respect and are persuasive, if not controlling.
In Buchner v. C. M. & N. Ry. Co., 60 Wis. 264; 19 N. W. 56, the Supreme Court of' Wisconsin has this to say of dicta:
“Mere obiter is not always reprehensible. On the contrary, some of the most sacred canons of the common law had their origin in the mere dicta of 'some wise judges.”
But one authority is called to our attention by counsel for appellant to support the contention they make for the non-liability of the master, viz: Vandewater v. N. E. & N. E. R. R. Co., 135 N. Y. 583. Mr. Justice Peckham, who wrote the opinion in the Vandewater case, points out that there had been two statutes in the state of New York, one aimed at the railroad company, and another providing for the punishment of engineers who failed to sound the whistle or ring the bell at crossings. The statute against the railroad company not only provided for a penalty to be collected by the district attorney, but in terms also made the company liable for all damages sustained by any person by reason of such negligence. This act, that is, the one against the company, Judge Peckham points out, had been “repealed in so many words.” It may well be that the New York court regarded the action of the legislature in repealing the act as indicating its will or purpose to relieve the company entirely. Moreover, the Vandewater case was decided by a divided court, Maynard, J., dissenting in the following language:
*587 “I dissent from that part of the prevailing opinion which holds that the duty of the engineer to give a signal when approaching a highway crossing is not the duty of the company whose agent he is in running the engine, hut concur in the result. ’ ’
From this we take it that the opinion in the Mandewater case is not entirely free from the criticism that it was dictum, since we find the dissenting judge concurring in the result reached, while dissenting from the doctrine on which counsel for defendant here rely, as laid down in the majority opinion.
Since a corporation may only act through its-agents, to give to the class of ordinances we are now considering the interpretation which defendant contends for would operate to relieve them entirely from liabilities which would attach to individuals engaged directly in the same occupation. For this reason, we prefer the views announced .by Judge Thompson and our own supreme court in the Eyan case, even granting counsel’s criticism with reference to them to be justified, to the doctrine laid down in the Vandewater case, supra. If -authority is required to justify our preference, it may be found in Sagers v. Nuckolls, 3 Colo. Apps., 95-9, where Judge Reed, speaking of the maxim “gw facii per alium facit per se,” and its more modern application, says:
“The great multiplication of corporations, where all acts are necessarily performed by agents or servants, has latterly led to the extension- and widening of the application (of the maxim) in many cases in order to afford the requisite protection, and from such necessity, courts have gradually extended *588 the principle to cover cases not formerly supposed to be embraced.”
The whole question is one of evidence, and may be disposed of thus: the doctrine of respondeat superior, by the application of which -the master, under certain circumstances, becomes liable for damages flowing from the negligent acts of his servant, does not depend upon the rules applicable to the introduction of the evidence whereby the servant is convicted. Not until the guilt of the servant has been established can the doctrine be applied; once the servant’s negligence becomes established (by proof 'of the violation of an ordinance, or otherwise), the master’s liability attaches (providing, of course, injuries ensue without fault on the part of the plaintiff) . Hence it follows that any evidence that would be competent agaihst the servant, were he the defendant in the action, is equally competent against the master, providing, of course, the servant be acting within the scope of his employment or authority when the accident occurs.
2. It is unfortunate that the abstract of record and the brief of appellee in the Ryan base have not been preserved, and are not to be found on file in the Supreme Court library. We do find, however, by an examination of the records in the Ryan case, that counsel for appellant in their opening brief say that the second cause of action in plaintiff’s complaint, to which they had unsuccessfully demurred, “attempted to set out an absolute cause of liability on the mere fact that certain ordinances were not, as complainant claimed, literally complied with; and apart from any negligence, unless a mere failure to comply with the literal requirements of *589 tlie ordinance as construed by appellee was negligence per se, there is no statement of any negligence other than this.” Then, proceeding with their brief, counsel in the Eyan case say: “The appellant maintains, First — If the ordinances are applicable, the violation of them is not negligence establishing liability per se.” We find in examining the original record that a petition for a rehearing was filed in the Eyan case, in which counsel for the railroad company say:
“The court (meaning the supreme court) having decided that violation of an ordinance is negligence per se, the appellant must rest content with that decision; for, although, as it has been shown, on page 7 of its brief, there are many respectable authorities which hold that such violation is merely evidence which, may be considered as tending to show negligence, nevertheless, it must be admitted, as defendant did admit upon the argument, that there are authorities the other way, and in view of that fact, it does not press that question further.”
It would therefore seem to conclusively appear that the supreme court in the Eyan ease has unequivocally held that the violation of an ordinance of a city is negligence per se. At least, counsel for the railroad, who may be assumed to have been fairly well advised on that point, evidently so understood the matter, and so understanding it, declined further to debate the question on rehearing. The supreme court has repeatedly held that the failure to perform a statutory duty imposed by a statute wholly penal in its character, is negligence per se.
*590 Platte & Denver C. & M. Co. v. Dowell, 17 Colo., 376-85; Richardson v. El Paso Cons. G. & M. Co., 118 Pac., 983-6.
The distinction which defendant seeks to make between the evidentiary character of statutes and ordinances is contrary to the great weight of authority. Shearman & Redfield on the Law of Negligence (5th ed.), sec. 457, say:
‘ ‘ Certain precautions are frequently required of railroad companies by statutes or local ordinances and enforced by the imposition of penalties for their neglect. * * * It is well settled that any violation 'of them is competent evidence of negligence, * '* * even.-though the statute or ordinance simply imposes a penalty for its violation. The dictum to the contrary in a New York case (Brown v. Buffalo etc. Ry. Co., 22 N. Y., 191), * * * is now so completely exploded as to need little notice (Massoth v. Delaware Go., 64 N. Y., 524). Statutes and valid municipal ordinances stand upon the same footing in this respect.”
In C. & M. Ry. Co. v. Reed, reported in 40 Ill. App., 47, it is ruled that a failure to comply with the law (there a statute) creates a liability for damages caused thereby, and that this liability attaches notwithstanding by a revision of the statute, there had been omitted a provision of the law originally contained in the act, declaring a railroad company was liable “for all damages sustained by reason of such neglect. ’ ’
In section 468 of Shearman & Redfield, the authors say:
“An omission thus to ring the bell at such a crossing, therefore, is negligence, and is sufficient *591 to sustain a verdict in favor of the one who was injured thereby, whether the statute does or does not expressly provide that the company shall be liable for damages resulting therefrom. ’ ’
Bearing in mind the fact that one of the two ordinances before the court in the Byan case provided for a personal penalty, running against the engineer, rather than the company, we are of opinion that each and all of the questions with reference to the ordinance, so ably urged by defendant in the case at bar, have been determined by our supreme court, and the weight of authority contrary to the contention of its counsel.
3. At the instance of counsel for defendant, thirteen special questions were submitted to the jury. We may summarize certain of these questions as follows: the jury found specially in response to these questions (a) that the driver of the wagon was guilty of negligence while crossing the street (b) that he was crossing the street at a speed greater than four miles an hour (c) that the driver was guilty of further negligence in not checking his horses and applying the brake (d) that he was guilty of negligence after seeing the plaintiff approaching (e) that the plaintiff was exercising the necessary amount of caution in approaching the intersection of the streets (f) that the plaintiff was exercising the necessary amount of caution in attempting to cross the intersection (g) that the plaintiff exercised the necessary amount of caution after he saw the mail wagon coming toward him (h) that the failure of the plaintiff to exercise the necessary amount of caution did not contribute in any manner to the accident (i) that the accident was not due *592 to the lack of reasonable care on the part of both the driver and the plaintiff (j) that the accident would not have occurred if the wagon had not been going at a greater rate of speed than four miles per hour. In view of these special findings of fact, it becomes unnecessary to discuss any assignment of error involving the doctrine of contributory negligence.
4. The evidence in the case was meager. The only eye witnesses who testified were the plaintiff and a mail agent who was riding with the defendant’s driver at the time of the accident. Their testimony, it is conceded, is conflicting, on practically every point to which it was directed. Both witnesses testified that the horses were in a trot at the time they were crossing the intersection of the street; the plaintiff that they were going at a rapid pace, while the mail agent testified that they were in a slow trot, but apparently, from his testimony, no attempt was made by the driver to check their speed, whatever it may have, been, as they approached and entered upon the intersection of the streets, until an instant before the collision, which occurred at a point some distance from where the horses entered upon the intersection. The wagon was heavily loaded, and proceeding up grade. Plaintiff testified that after seeing his danger and finding that he would be unable to pass entirely in front of the horses and across Seventeenth street, he turned his wheel in the direction the horses were proceeding, and went, as rapidly as possible, some 35 feet, before the team overtook ■ him. The mail agent testified that.the plaintiff was concealed from the view of his companion, the driver, by a coal *593 wagon that had stopped to let the mail wagon pass, and that the plaintiff rode directly against the horses from behind said coal wagon. The plaintiff denied the presence of the coal wagon, and several other witnesses were called, who were at the scene of the accident almost immediately after it occurred, and testified that they saw no coal wagon in the vicinity. The evidence further showed that the rear wheel of plaintiff’s bicycle was the one damaged. Under this state of evidence, we think the case was properly submitted to the jury. The duty of trial judges with reference to submitting or taking cases of this sort from juries is ably and elaborately presented in the opinion in the case of Williams v. Sleepy Hollow Mining Co., 37 Colo., 62. The rule there announced clearly justifies the action of the trial court in submitting the case to the jury.
Decided February 13, A. D. 1912.
Rehearing denied April 8, A. D. 1912.
There áre other questions raised and discussed by defendant, which we do not deem it necessary to consider. The judgment of the trial court is affirmed.

Affirmed.