HARRY T. FOGG, administrator, *vs*: NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

SAME *vs*. SAME.

Plymouth.   January 17, 1916. — March 21, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Negligence,* Causing death, Railroad.

Where a driver of an automobile, the brakes and mechanism of which were in proper condition and which could have been stopped within sixteen feet, on a clear day approached a crossing at grade of a railroad with a travelled way at the rate of from six to twelve miles an hour along a highway where, throughout a course beginning one hundred and six feet from the crossing and running to a point seventy feet from it, there was an unobstructed view between two houses of a stretch of the tracks of the railroad to his left, beginning three hundred and twenty-two feet from the crossing and running to a point fourteen hundred and seventy-eight feet from it, and did not look up the track to his left until he was seventy feet from the crossing, when he made a motion toward his emergency brake but the forward movement of the automobile was retarded only slightly and it ran upon the railroad track and was struck by a railroad train, of which he had had no warning by whistle, bell or signal, and he was killed, an action against the railroad company for his death cannot be maintained under St. 1907, c. 392, § 1, because there is no evidence which would warrant a finding that the decedent was in the active exercise of care for his safety.

It also was *held* that the foregoing facts do not call for an application of the rule permitting a finding of due care on the part of one, who, suddenly and without fault on his part finding himself in a position of impending and unexpected danger, becomes confused, because the decedent's own carelessness placed him in such a position.

It appearing that the decedent's wife was with him in the automobile and also was killed and the only evidence as to her conduct being that, as the automobile approached the crossing, she was looking toward her right, it was *held*, that, if she was trusting to the care and caution of her husband, there could be no recovery for her death because he was negligent, and, if she was not so trusting, there could be no recovery because there was no evidence that she did anything for her own safety.

CARROLL, J.   Ebenezer T. Fogg and Fannie M. Fogg, husband and wife, were struck and killed by a train of the defendant at a grade crossing near Kenberma station in the town of Hull on the afternoon of May 30, 1913.   These actions are brought by their son, who is the administrator of both of their estates, to recover for their death.

At this point the railroad tracks run approximately north and south. The train was going in a northerly direction from Nantasket Beach toward Pemberton. Mr. and Mrs. Fogg, in an automobile driven by Mr. Fogg, approached the crossing from the east or ocean side, along Kenberma Street, into which they had turned from Manomet Avenue, a street running parallel with and about one hundred and twenty feet east of the tracks. On the south side of Kenberma Street and east of the tracks were two houses; the one nearer the tracks was seventy-one feet from the street line and twenty feet from the nearest rail; the other was twenty feet from the street line and fourteen feet from Manomet Avenue. Looking from Kenberma Street between these two houses, the tracks to the south could be seen throughout a course beginning at a point one hundred and six feet from the crossing and running to a point seventy feet from it. At a point one hundred and six feet from the crossing a man could be seen on the tracks at a distance of three hundred and twenty-two feet; at a point seventy feet from the crossing he could be seen fourteen hundred and seventy-eight feet to the south. After passing the point where the nearer house obstructed the view, at a point one hundred feet from the crossing, one hundred and nineteen feet of track were visible, and at fifty feet from the crossing one hundred and ninety-two feet of track could be seen. According to the record, the view of the traveller on Kenberma Street, looking south and approaching the crossing from the east, was in no way obstructed except by these two houses.

In 1901 Kenberma Street was laid out as a public way to the line on each side of the railroad location, no portion of which was included in the layout. On a post at the southeast corner of the crossing, facing east, was the sign, "Not a public crossing. Dangerous." This sign had become weatherbeaten, and the evidence was conflicting as to the distance at which it was legible. Another sign on the same post read, "No trespassing." There was evidence that this sign was not there at the time of the accident. No other signs were at the crossing, and there were no gates or flagman. Before the street was laid out the six-foot platform of the Kenberma station, extending on the east side of the tracks from what is now Kenberma Street north to Alden Street, was constructed by the defendant. North and south bound trains discharged their

passengers on the east side. Before the laying out of the street, there was a plank crossing between the tracks. This had been maintained and kept in repair by the defendant up to the time of the accident.

For eight summers Mr. Fogg had travelled on this Nantasket branch railroad. There was evidence that trains ran on an hourly schedule. It was generally understood that all trains stopped at this station. When the intestates were on Manomet Avenue, just before turning into Kenberma Street, a train passed them in full view, going in the direction of Pemberton. The train which hit the automobile was an express train going at the rate of thirty-five or forty miles an hour, and there was evidence that no signal of its approach by bell or whistle was given. The automobile was going at the rate of from six to twelve miles an hour, and, according to the evidence, could have been stopped inside of twice its length, or in about sixteen feet. One witness stated that Mr. Fogg looked toward Pemberton, and when about seventy-five feet from the crossing, he looked toward Nantasket. He then reached down for the brake, but the forward motion of the car was only slightly retarded, the car swinging to the right. Another witness stated that the deceased, when fifteen or twenty feet from the track, made some movement — "The car seemed to him to gradually slow up a little."

The actions are under St. 1907, c. 392, § 1. There was a verdict for the plaintiff in each case. *

Was there any evidence of due care of the intestates, sufficient for the consideration of the jury? Fogg, the driver of the car, was to some extent familiar with this crossing, and just as he turned from the avenue a train left Kenberma station for Pemberton. It was in the afternoon of a clear day, there was nothing to interfere with a view of the tracks to the south except the two houses, and between them for some distance there was an unobstructed view in this direction. The house nearer the crossing was seventy-one feet from the street line and twenty feet from the track, thus leaving a wide open space across which he could look, with nothing to interfere with his view, and a hundred feet from the

---

* The actions were tried together before *Keating,* J. The defendant alleged exceptions.

crossing he could see to the south along the track for a distance of one hundred and nineteen feet.

Coming to a place of danger like a railroad crossing, where there is opportunity for sight and hearing, a traveller is not in the exercise of due care unless he uses his senses, looks, listens and governs his conduct accordingly. He cannot entirely rely upon signals and the performance of duty by the agents of the defendant. He must actively seek to safeguard his own safety by using his faculties and making use of the means at hand to save himself from danger. At a railroad crossing the burden is upon the traveller to show due care (unless the action is under St. 1906, c. 463, Part II, § 245, for failure to give the required signals). Such a place is one of special danger. As has been said, the care which common prudence requires of a traveller on the highway where there is no such peril is not the standard by which his conduct must be judged when approaching the tracks of a railroad in front of a rapidly moving train; and further, there must be affirmative evidence of this care, or the circumstances must be such that it can be properly inferred. Passing by the space between the two houses, where a long stretch of track was plainly visible, knowing he was approaching a railroad crossing and one hundred feet therefrom, he could look far enough to see an approaching train and stop his car. He was then in a place of safety and had ample time to save himself from danger. If he did not look until he was seventy-five feet away, he might then have prevented the collision, for he could have stopped his car within a distance of twenty-five feet. Apparently he did nothing but make a motion in the direction of the emergency brake, the car slowing little, if any. This evidence fails to show the use of such care as the place and occasion demand. It shows à lack of that care which ordinary prudence requires.

The car was a new one. We must infer that the brakes and mechanism were in proper condition; there is no intimation to the contrary. The conclusion is irresistible either that Fogg did not look when he should, or looked in a careless manner, or else, seeing the approaching train and having the opportunity to prevent the collision, he failed to bring his car to a standstill, in which event he was careless. Again, if he failed to look until twenty feet from the crossing, considering the speed at which he

was going, with full opportunity, before reaching that point, to see the approaching train, he must be considered as failing in the use of due precaution. *Allen* v. *Boston & Maine Railroad,* 197 Mass. 298. *Lundergan* v. *New York Central & Hudson River Railroad,* 203 Mass. 460. *Slattery* v. *New York, New Haven, & Hartford Railroad,* 203 Mass. 453. *Ellis* v. *Boston & Maine Railroad,* 169 Mass. 600. *Farmer* v. *New York, New Haven, & Hartford Railroad,* 217 Mass. 158. *Chase* v. *New York Central & Hudson River Railroad,* 208 Mass. 137. *Rodriques* v. *New York, New Haven, & Hartford Railroad,* 210 Mass. 305.

Nor can it be said that the driver of the car suddenly found himself in a place of peril, and, with the oncoming train within a short distance, became confused and failed to seasonably apply his brakes, and therefore was not careless. This rule cannot be invoked in behalf of a plaintiff who has placed himself in such a position through his own lack of care. *Rundgren* v. *Boston & Northern Street Railway,* 201 Mass. 156.

The case at bar is to be distinguished from *Hubbard* v. *Boston & Albany Railroad,* 162 Mass. 132, where the crossing was an "exceedingly dangerous" place, obstructions prevented one from seeing and a ledge interfered with hearing. In *Hicks* v. *New York, New Haven, & Hartford Railroad,* 164 Mass. 424, the crossing was looked upon as a dangerous one, where a house and other objects made it impossible to see an approaching train, and the plaintiff stopped, looked and listened, and neither saw nor heard the train. In *Hanks* v. *Boston & Albany Railroad,* 147 Mass. 495, and *Morrissey* v. *Boston & Maine Railroad,* 216 Mass. 5, the view of the traveller was obstructed.

If Mrs. Fogg trusted to the care and caution of her husband, her administrator cannot recover; if she did not do so, there is no evidence that she did anything for her own safety. There was evidence that as she approached the crossing she was looking toward the house on Alden Street, north of the crossing, in a different direction from the approaching train. *Shultz* v. *Old Colony Street Railway,* 193 Mass. 309. *Chadbourne* v. *Springfield Street Railway,* 199 Mass. 574. *Peabody* v. *Haverhill, Georgetown & Danvers Street Railway,* 200 Mass. 277. *Lundergan* v. *New York Central & Hudson River Railroad,* 203 Mass. 460.

As there was no evidence of due care on the part of the de-

cedents, the other questions in the case need not be considered. In both cases the exceptions are sustained.

*Exceptions sustained.*

*F. W. Knowlton, (C. O. Pengra* with him,) for the defendant.

*Lee M. Friedman & T. H. Buttimer, (F. J. Geogan* with them,) for the plaintiff.