GERTRUDE G. HARBER AND WILLIAM A. HARBER, HER HUSBAND, APPELLANTS, v. FRED T. GRAHAM, RESPONDENT.

Submitted May 26, 1928—Decided October 15, 1928.

For the appellants, *William Hamilton Osborne*.

For the respondent, *Robert Carey*.

The opinion of the court was delivered by

WHITE, J.   The jury found a verdict for the defendant in an action for damages for personal injuries brought by a sister against her brother for his "gross negligence" in the driving of his automobile, in which she, upon his very urgent invitation and solicitation, was touring through the Massachusetts hills with him.   His gross negligence is alleged to have consisted in coasting his car at the rate of forty miles per hour with the clutch thrown out and without applying the brakes down a long steep grade which had a double curve in it in plain sight at least one thousand feet ahead, which when he got too near he saw he was unable to take, and so deliberately drove the car at full speed off the side of the road over rocks, &c., until it buried its nose in a deep culvert or ditch, shooting the sister out through the windshield and injuring her very seriously.   This was after the sister only five minutes beforehand warned the brother of the danger of driving the New England hills that way, when she had been informed by him that he was master of the car and that she did not have anything to worry about.   The accident having taken place in Massachusetts the case was governed by the Massachusetts

law, which, it is conceded, denies an invitee redress against the invitor for injuries resulting from the latter's negligence unless such negligence amounts to "gross negligence." The learned trial judge in his charge to the jury defined gross negligence under the Massachusetts law (correctly as it is conceded) by quoting from the Massachusetts case of *Altman* v. *Aronson*, 121 *N. E. Rep.* 505, as follows: "Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is heedless and palpable violation of legal duty respecting the rights of others. The element of culpability, which characterizes all negligence, is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. But it is something less than the willful, wanton and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence. It falls short of being such reckless disregard of probable consequence as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure."

Upon defendant's request the court then charged as follows: 8th. "If the accident occurred through the exercise of poor judgment by the defendant, the defendant is entitled to a verdict, as the exercise of poor judgment does not constitute gross negligence.

11th. "If the jury find that the plaintiff and the defendant were engaged in a common enterprise at the time of the acci-

dent, then, regardless of any question of negligence, the defendant is entitled to a verdict."

We think both of these points were erroneously charged.

Taking them up in their order: If the learned trial judge, in speaking of poor judgment, had in mind the principle of "sudden emergency judgment," as applied to defendant's decision to drive off the road when he saw, too late to avoid it, that he coould not safely negotiate the double curve, that doctrine is not available to him because it would only apply if the emergency arose without negligence on his part. This is so irrespective of whether the negligence does or does not amount to gross negligence as defined by the Massachusetts cases. In fact the cases in that state expressly lay down the rule that "one placed in sudden danger is held responsible for poor judgment if his own negligence contributes to cause the emergency." *Fogg* v. *New York, New Haven and Hartford Railroad*, 223 *Mass.* 444; *Tuttle* v. *Street Railway*, 239 *Id.* 553; *Rundgren* v. *Street Railway*, 201 *Id.* 156.

We think, however, that what the learned trial judge actually had in mind was that the idea of "poor judgment" is inconsistent with that of gross negligence as defined in the Massachusetts case quotation. With this view we do not agree. That "poor judgment" is inconsistent with the willful injury idea, including in that idea the intentional disregard of obviously likely injurious consequences which is held to be tantamount to willfulness we quite agree. Poor judgment lacks the element of willfulness incident to either phase of this cause for liability. But the Massachusetts case expressly differentiates gross negligence from and as falling short of willful injury. How, therefore, does poor judgment in a case of gross negligence differ from such judgment in a case of ordinary negligence? We think it does not so differ. Obviously, a large proportion of negligent injuries are the result of some kind of judgment. Surely it will not do to say that if the judgment is good it may be negligent, whereas if it is bad it cannot be. The duty to use the care which ordinarily prudent persons would use under the same circumstances, necessarily involves the exercise of judgment, and the breach of that duty may arise from the failure to exercise

that judgment, or because the exercise of obviously poor instead of good judgment, quite as well as from any other cause. Can it be that gross negligence contains any underlying element differentiating it in this respect from ordinary negligence? We think not. Both fall short of willfulness either actual or constructive, and as is pointed out in the Massachusetts case above quoted, differ from each other in degree only rather than in quality. That this must be so we think is demonstrated by the fact that—"The later American cases, with practical unanimity, reject the doctrine that negligence is capable of division into the different degrees of slight, ordinary, gross. These cases recognize but two forms of negligence, characterized as ordinary and willful negligence. In this view the word 'gross' is regarded as word of description and not of definition. 'Slight negligence,' 'ordinary negligence' and 'gross negligence' are each descriptive of an omission of duty—a neglect without intention to do harm." *Kelly* v. *Malott*, 135 *Fed. Rep.* 74; *Bell Railroad* v. *Banicki*, 102 *Ill. App.* 642.

Taking up the "common enterprise" point, we think the learned trial judge lost sight of the fact that this principle, resting as it does upon the relation of agency existing *inter sese* among persons engaged in a joint or common enterprise, is applicable only as regards third persons not parties in such enterprise. For instance, if two persons engaged in a common enterprise are as a part of that enterprise, riding in an automobile driven by one of them who is subject to the direction of the other, and the other one is injured in a collision with another car because of the negligence of the drivers of both, the injured joint-enterprise party cannot recover against the driver or owner of the other car, because of the contributing negligence of his agents, viz., if the party is engaged with him in the joint enterprise and under his control. But if there had been no other car in the case, and the injury had resulted from the negligent driving of the man who was driving the car in which he was riding, the fact that both of them were engaged in a common enterprise would be no bar to a recovery by him against the negligent driver. Thus, in the Massachusetts case of *Pepper* v. *Morrill*, 24 *Fed.*

*Rep.* (*2d series*) 320, when husband and wife were taking an automobile trip together in the husband's car which was being driven at the time (to spell the husband who became tired of driving) by the defendant (who was the husband's invited guest), the accident resulted from the car being driven at an excessive rate of speed and the driver attempting to turn at such speed into a left-hand fork of the road. Held, the wife could recover against the driver although the latter, as such, was, as a matter of law, the husband's servant, and this although the husband, by suddenly calling to the driver to take the left turn, was at least partially to blame for the accident; and in *Bushnell* v. *Bushnell* (*Supreme Court of Errors, Connecticut*), 131 *Atl. Rep.* 432, it is held that "one who in process of joint enterprise is operating vehicle, if negligent, any of them associated with him, including his wife, may hold him for negligence [in that case he fell asleep], as the doctrine of joint enterprise applies where an attempt is made to hold a third person, not the driver of the automobile, but someone with whom a collision has occurred."

For the foregoing reasons the judgment is reversed and a *venire de novo* awarded.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, MINTURN, BLACK, KAYS, HETFIELD, DEAR, JJ. 7.

*For reversal*—PARKER, KALISCH, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, JJ. 8.