INTERSTATE MOTOR LINES, Inc., v.
GREAT WESTERN RY. CO.
No. 3423.

Circuit Court of Appeals, Tenth Circuit.
May 19, 1947.

Kenneth M. Wormwood, of Denver, Colo. (William T. Wolvington, of Denver, Colo., on the brief), for appellant.

Kenneth W. Robinson, of Denver, Colo. (Caldwell Martin and M. B. Holt, Jr., both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The railroad track of the Great Western Railway Company and North Washington Highway cross at a point about three miles east of Loveland, Colorado, called Bird's Crossing. A train belonging to the railway company and a truck owned by Inter- state Motor Lines, Inc., collided at the crossing. The train consisted of the engine, twelve freight cars, and the caboose. The truck consisted of a diesel motor and tandem trailer, and it was loaded with approximately 30,000 pounds of chilled meat. The railway company instituted this action against the motor company to recover damages. It was alleged in conventional language that the negligence of the motor company was the proximate cause of the collision. The motor company denied negligence on its part, and by cross complaint sought to recover damages alleging that the negligence of the railway company was the efficient cause of the accident. The case was tried to a jury, verdict was returned for the railway company, judgment was entered accordingly, and the motor company appealed.

■ Error is assigned upon the refusal of the trial court to direct a verdict for the motor company. The argument is that there was no evidence establishing negligence on the part of the motor company; but that assuming the evidence did show negligence on its part, the railway company was guilty of contributory negligence as a matter of law and therefore was not entitled to recover. It is the law in Colorado that negligence on the part of the defendant will not authorize recovery of damages where the plaintiff was also guilty of contributory negligence which was one of the proximate causes of the injury. Headley v. Denver & R. G. R. Co., 60 Colo. 500, 154 P. 731; People v. Schaeffer, 100 Colo. 70, 65 P.2d 699. It would not serve any useful purpose to review in detail the evidence bearing upon the question of negligence and contributory negligence. It is enough to say in this connection that we think the evidence in its totality presented an issue of fact as to each question and that therefore the court providently denied the motion for a directed verdict.

■■ Complaint is made that the court admitted in evidence two regulations promulgated by the Interstate Commerce Commission under the Motor Carrier Act of 1935, as amended, 49 U.S.C.A. § 301 et seq. One of the regulations provides in effect that the speed of a motor vehicle operated in interstate commerce for hire shall upon

approaching a railroad crossing be reduced to a rate that will enable a stop to be made before reaching the nearest rail, and that the crossing shall not be traversed until due caution has been taken to ascertain that the course is clear; and the other provides in substance that no such motor vehicle shall be driven at a greater speed than is reasonable and prudent, having due regard for existing conditions. In Wright v. Des Moines R. Co., 231 Iowa 410, 1 N.W.2d 259, it was held that the book of rules and regulations adopted by the commission under the Act, was not admissible in evidence. But there the entire book of rules was admitted. It contained 84 pages and dealt in large part with matters plainly foreign to the issues in the case. The court did take occasion to say in connection with its discussion of one of the rules which was admitted in evidence here that it was not material to the issues; and that as the rules of the commission do not have the force and effect of law, a violation of them would not constitute negligence. The Act, supra, authorizes and empowers the commission to establish reasonable rules and regulations governing contract carriers by motor vehicle with respect to safety of operation, 49 U.S.C.A. § 304. Rules and regulations promulgated by the commission within the scope of its permitted authority under the Act have the force and effect of law. And while the provisions of the Act or of valid regulations promulgated under it with respect to safety of operation of motor vehicles on the highway may be intended primarily for the protection of employees engaged in transportation in interstate commerce for hire, the duties imposed by such provisions or such regulations are secondarily for the protection of others on the highways with right. Fairport, Painesville & Eastern Railroad Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446.

■■ Under the law of Colorado, the failure of a truck engaged in commercial operation on the highway to comply with a governing statute or municipal ordinance reasonably intended to protect and safeguard the public constitutes negligence, and damages may be recovered if the negligence was the efficient cause of injury. Denver & R. G. R. Co. v. Ryan, 17 Colo.

98, 28 P. 79; Denver, T. & G. R. Co. v. Robbins, 2 Colo.App. 313, 30 P. 261; Denver Omnibus & Cab Co. v. Mills, 21 Colo. App. 582, 122 P. 798; Phillips v. Denver City Tramway Co., 53 Colo. 458, 128 P. 460, Ann.Cas.1914B, 29; Hedges v. Mitchell, 69 Colo. 285, 194 P. 620; Crosby v. Canino, 84 Colo. 225, 268 P. 1021; Colorado & S. R. Co. v. Honaker, 92 Colo. 239, 19 P.2d 759. Where damages are sought for injury proximately caused by the negligent operation of a train, truck, or taxicab in violation of a controlling municipal ordinance, the ordinance is admissible in evidence. Hedges v. Mitchell, supra. And we think that by fair analogy in a case of this kind where the operation of a truck engaged in interstate commerce for hire in violation of the regulations of the commission promulgated under authority of the Act is relied upon as constituting an element of negligence, the regulations are admissible in evidence.

■ The action of the court in rejecting certain tendered evidence is challenged. The fireman on the engine involved in the accident was called as a witness for the railway company. On cross examination, he testified that the crossing was a dangerous one; and later in the course of cross examination, he testified that it was a bad crossing. That testimony was admitted without objection and remained before the jury. The motor company sought on further cross examination to prove by the witness that on previous occasions he had a number of close calls at the crossing; that on one or two previous occasions he had known of women going in the ditch to avoid hitting the train; that on previous occasions he had told the engineer to stop in order to avoid a collision; that he had known of the engineer applying the airbrakes and stopping to avoid a collision; that he did not know why an underpass had not been provided there; and that it was the worst crossing in the world. In rejecting the tendered testimony, the court expressed the view that the testimony was opinion evidence; but the court stated in connection with the ruling that the motor company might interrogate the witness with respect to the physical conditions at the crossing as indicating that it was a danger-

ous crossing. In T. & H. Pueblo Bldg. Co. v. Klein, 5 Colo.App. 348, 38 P. 608, a girl was killed by falling out of an elevator in a building. The father and mother sought damages, alleging negligence in the operation of the elevator as the efficient cause of the accident. Evidence was admitted tending to show that on other occasions the same employee operated the elevator in a negligent manner. On appeal, it was held that the evidence was inadmissible. The court said in substance that only the negligence at the time of the accident in question was in issue. In Diamond Rubber Co. v. Harryman, 41 Colo. 415, 92 P. 922, 15 L.R.A.,N.S., 775, plaintiff was injured by tripping upon and falling over an obstruction in the sidewalk called a gooseneck and used to inflate bicycle and automobile tires. Evidence of other persons that they had tripped on the gooseneck was admitted. The admission of that evidence was held to be error. It was said that if the fact that others had tripped on the obstruction could be shown for the purpose of establishing negligence, there would necessarily be as many distinct issues injected into the case as there were persons called as witnesses who passed over the sidewalk in the vicinity of the gooseneck; that the care they had exercised and the conditions under which they had tripped would be the subject of inquiry; that it then would be proper to show that others had passed along the sidewalk and had not tripped; that thus the case would be confused with a great number of collateral issues; and that evidence of collateral facts not capable of aiding in the determination of the main issue in dispute should be excluded. Finally, the court said that the character of the obstruction was susceptible of proof; that such proof was adduced; and that the question whether it was dangerous was to be determined from the evidence, not whether others passing along the sidewalk had suffered injury. In City and County of Denver v. Brubaker, 97 Colo. 501, 51 P.2d 352, plaintiff slipped and fell on a public sidewalk because of snow and ice which the city allowed to form and remain there. The admission of evidence that others slipped and fell at the same place and almost immediately prior to plaintiff's injury was upheld. It was said that under the peculiar circumstances presented, the evidence was admissible as establishing constructive notice of the dangerous condition existing at the time. But the court was at pains to limit the admission of such testimony to a case of that kind. The court was careful to say that it was the general rule that evidence of similar but disconnected incidents is irrelevant and immaterial on the question whether plaintiff is entitled to recover because of negligence of defendant. The court further said that many different factors may enter into an individual case, and that the admission of evidence of independent but similar instances, possibly tending to show negligence or to imply negligence in the pending case, would violate a salutary principle of proof. And then the court straightway said that the particular case being considered did not present a situation of that kind. In the light of these cases, we are unable to say that the rejection of the tendered evidence tending to show near accidents on other and unrelated occasions constituted error.

■ The giving of two instructions is assigned for error. One was in substance that even though the railway company was negligent, yet if the driver of the truck could have discovered the locomotive at a time when he could avoid the collision, although the train could not do so, the motor company was liable for all damages flowing from the collision. The other was in substance that it was the law in Colorado that a traveler approaching a public highway in the country was charged with the duty of knowing that others may be negligent and that he must act accordingly. No objection or exception was taken to either of these instructions, and therefore the criticisms now directed against them are not open to review. Lindsay v. Burgess, 156 U.S. 208, 15 S.Ct. 355, 139 L.Ed. 399; Order of United Commercial Travelers v. Greer, 10 Cir., 43 F.2d 499; Kitrell v. United States, 10 Cir., 79 F.2d 259, certiorari denied, 296 U.S. 643, 56 S.Ct. 248, 80 L.Ed. 457; Scritchfield v. Kennedy, 10 Cir., 103 F.2d 467; Forakis v. United States, 10 Cir., 137 F.2d 581.

■ The remaining contention advanced by the motor company is that the court erred in refusing to submit to the jury

the question whether the exercise of ordinary care required the railroad company to maintain at the crossing an electric wigwag, flash signal, or other special warning facility. There was a reflectorized advance warning signal on each side of the railroad and also a reflectorized crossbuck sign, but no electric wigwag, flash signal, bell, or other like special warning facility. No statute in Colorado has been called to our attention requiring a railroad company to maintain at a crossing of this kind any special warning facility, and there is no general duty at common law to maintain any facility of that kind at a crossing. But the rights of the general public and those of the railroad company at a crossing of this kind are reciprocal and mutual; and though the common convenience gives to trains precedence over automobiles or trucks in the use of such a crossing, it is upon the condition that the railway company will give due warning of the approach of its trains in order that automobiles and trucks may be stopped safely and wait for the trains to pass. That which constitutes reasonable warning depends upon the conditions and circumstances at the particular crossing. Of course, the vigilance and care must be greater at crossings in a city or town where travel is heavy than at ordinary crossings in the country. Grand Trunk Railway Co. of Canada v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485; Chicago & N. W. Ry. Co. v. Golay, 10 Cir., 155 F.2d 842. But the mere fact that a crossing is in the country does not necessarily in all circumstances relieve the railway company of any duty to maintain a special warning signal. If a crossing in the country is peculiarly dangerous to travelers on account of its location, or mode of construction, or because the track is curved, or the view is obstructed, the railroad company is required in the exercise of ordinary care to meet the peril with a special warning signal such as a bell, an electric wigwag, a flash signal, or other like caution. Chicago & N. W. Ry. Co. v. Netolicky, 8 Cir., 67 F. 665; Hubbard v. Boston & A. R. Co., 162 Mass. 132, 38 N.E. 366; Wagner v. Toledo, P. & W. R. R., 352 Ill. 85, 185 N.E. 236; Homan v. Missouri Pac. R. Co., 334 Mo. 61, 64 S.W.2d 617, certiorari denied, 291 U.S. 683, 54 S.Ct. 561, 78 L.Ed. 1070; Roshel v. Litchfield & M. Ry. Co., Mo.App., 112 S.W.2d 876.

Here, the railroad track and the highway cross substantially at right angles. The railroad runs east and west, while the highway runs north and south. In approaching the crossing from the east, a train passes through some cuts; and from the time a train enters a cut about a quarter of a mile east from the crossing it is impossible for one on the engine to see anything on the highway until the train reaches a point very near to the crossing. Approaching the crossing from the south, there is a rise of approximately five per cent in the highway. Specifically, the rise in elevation is 48 feet in the last 950 feet of the highway. The terrain immediately to the right of the highway as one approaches from the south is elevated substantially above the highway itself. And in addition a residence, a barn, two box cars demounted and used by a farmer for storage purposes, and an elevator are located east of the highway and obstruct in part a view of the track as a traveler approaches the crossing from the south. The accident occurred shortly after dark. The driver of the truck testified that he looked both to the right and the left as he approached the crossing and did not see any headlight of a train; and that he did not know what had happened until he was told about the collision. Others testified that the headlight was burning and that they saw it. When all of the facts and circumstances are considered together, and each is accorded the weight to which it is appropriately entitled, men of reasonable minds might differ as to whether the exercise of ordinary care and prudence required the railway company to install and maintain some special warning signal. It therefore was a question for the jury to determine whether the failure to install and maintain such a signal constituted negligence, and that question should have been submitted to the jury under appropriate instructions of the court.

The judgment is reversed and the cause remanded