COMMONWEALTH *vs.* BOSTON & MAINE RAILROAD.

Middlesex.   March 28. — Sept. 21, 1882.   ENDICOTT, J., absent.   LORD, J., did not sit.

An indictment against a railroad corporation, under the St. of 1874, c. 372, § 163, alleged that at a certain place the railroad crossed a highway upon the same level; that one S. was travelling on the highway and in the exercise of due diligence; that a locomotive engine attached to a freight train was passing the place of intersection; that a locomotive engine was coming in the opposite direction; that while the corporation was thus running the last-named locomotive, it was the duty of the corporation, when approaching said place of intersection, in view of the position of said first-named locomotive and train of cars, to reduce its rate of speed and give proper signals and warnings; but that the corporation neglected to do so, and with said last-named engine ran over and killed said S. *Held,* that the negligence alleged was that of the servants of the corporation, and not of the corporation itself, and that the indictment was insufficient. *Held, also,* that the objections to the indictment were not for formal defects apparent on the face thereof, within the St. of 1864, c. 250, § 2, and could be taken after the jury had been sworn.

A railroad corporation is responsible, under the St. of 1874, c. 372, § 164, for the neglect of its servants to give the signals required by § 123, when crossing a way at the same level.

The St. of 1874, c. 372, § 164, is not limited to cases of injury which do not result in death, but applies as well to cases of loss of life.

The rule, that, where the same offence is charged in different counts of an indictment, the whole indictment may be submitted to the jury, with instructions, if they find the defendant guilty upon any count, to return a general verdict of guilty, is not applicable in a case where one count of the indictment is bad, and the evidence applicable to such count is submitted to the jury with the rest, against the objection of the defendant.

INDICTMENT, in four counts, on the St. of 1874, c. 372, §§ 163, 164, to recover, for the use of the widow and only child of Sherburne T. Sanborn, a fine, by reason of the loss of his life, from being run over, on September 22, 1880, at a place in Wilmington where the defendant's railroad crosses a highway at grade.

At the trial in the Superior Court, before *Gardner,* J., the judge submitted the case to the jury upon the third and fourth counts only. A general verdict of guilty on these counts was returned; and the defendant alleged exceptions, the substance of which appears in the opinion.

*D. S. Richardson & G. F. Richardson,* for the defendant.

*W. Gaston & S. J. Elder,* for the Commonwealth.

C. ALLEN, J. The first question to be considered in this case is, whether the third count of the indictment is good in itself, or is supported by the evidence. The count in substance charges that at a certain place the railroad crossed a highway upon the same level; that one Sanborn was travelling on the highway and in the exercise of due diligence; that a locomotive engine attached to a freight train was passing the place of intersection; that a locomotive engine was coming in the opposite direction; that, while the corporation was thus running the last-named locomotive engine, it was the duty of the corporation, when approaching said place of intersection, in view of the position of said first-named locomotive and train of freight cars, to reduce its rate of speed and give proper signals and warnings; but that the corporation neglected to do so, and with said last-named engine ran over and killed said Sanborn.

This count is founded on the St. of 1874, c. 372, § 163, which imposes a penalty upon the corporation, if, by reason of its negligence or carelessness, or of the unfitness or gross negligence or carelessness of its servants or agents while engaged in its business, the life of any person being a passenger, or of any person being in the exercise of due diligence, and not being a passenger or in the employment of said corporation, is lost. The count, it will be observed, does not charge the unfitness or gross negligence or carelessness of servants or agents of the corporation, but negligence of the corporation itself.

The distinction between these different grounds of liability to indictment has been observed in all the earlier legislation upon this subject. The statutes respecting liability for the loss of life of a passenger were the St. of 1840, c. 80, and the Gen. Sts. c. 63, § 97; those respecting liability for the loss of life of one not being a passenger were the St. of 1853, c. 414, § 1, and the Gen. Sts. c. 63, § 98. These provisions were blended together in the statute upon which the present count is framed. In all of these statutes, the negligence or carelessness of servants or agents must be gross, while the negligence or carelessness of the corporation itself need not be gross, in order to make the corporation punishable by indictment. This distinction has also been observed in all of the cases which are reported, where indictments have been founded upon either of these statutes. In *Commonwealth* v.

*Boston & Worcester Railroad*, 11 Cush. 512, the indictment, which was founded upon the St. of 1840, *c.* 80, alleged gross negligence and carelessness of servants and agents in running a train. In *Commonwealth* v. *Fitchburg Railroad*, 10 Allen, 189, the indictment, which was founded on the Gen. Sts. *c.* 63, § 98, contained similar averments. In *Commonwealth* v. *Vermont & Massachusetts Railroad*, 108 Mass. 7, the indictment, which was founded on the Gen. Sts. *c.* 63, § 97, contained similar averments; as did also the indictments in *Commonwealth* v. *Fitchburg Railroad*, 120 Mass. 372, and in *Commonwealth* v. *Boston & Lowell Railroad*, 126 Mass. 61. The indictment in *Commonwealth* v. *East Boston Ferry Co.* 13 Allen, 589, which was founded upon the Gen. Sts. *c.* 160, § 34, imposing a similar liability upon other carriers under like circumstances, set forth that the loss of life occurred through the negligence of the corporation itself, in not providing a suitable drop, connected with the landing-place, for passengers on the boats of the corporation.

It thus appearing that there is a distinction between the negligence or carelessness of the corporation itself, and the gross negligence or carelessness of its servants or agents while engaged in its business, it becomes necessary in framing an indictment to select and set forth with accuracy the ground which is to be relied on. The negligence of the corporation itself is one thing, and the gross negligence of its servants or agents is another thing, and an averment of one is not supported by proof of the other. In many cases, it is true that, as a corporation usually acts by agents, an averment of negligence on the part of a corporation may be supported by proof of negligence on the part of its agents. But this is not applicable to a liability imposed by a statute which expressly distinguishes between the grounds of liability, as does the statute now under consideration. In such a case as the present, negligence on the part of the corporation cannot be established by showing negligence on the part of its servants or agents, and by invoking the aid of a presumption that their negligence must be presumed to have been in pursuance of orders of the corporation itself. The statute makes a plain distinction ; the pleader selects the ground on which the liability of the defendant is to be made to rest; a line of precedents recognizes and illustrates the distinction between the

two grounds; and to allow the pleader to select the negligence of the corporation itself as the ground on which its liability is to be maintained, and to support it by proving merely the negligence of servants or agents, and by asking a court or jury to infer the existence of negligence on the part of the corporation from mere proof of negligence on the part of its servants or agents, would be to obliterate the distinction expressed in the statute, and to depart from the common rule of pleading. See *Commonwealth* v. *Fitchburg Railroad*, 126 Mass. 472.

Looking at the third count of this indictment in the light of these principles, we are of opinion, not only that it was unsupported by the evidence in the case, but that it is not a good count in itself. There was no proof, and there is no averment, that the corporation, by general rule or otherwise, had given to its servants or agents any instructions which were improper or unsuitable, or had so far failed to give proper and suitable instructions that the omission could justly be attributable to it as negligence; but the evidence and, by fair implication, the averment show that the negligence relied on was the omission to do what ought to have been done under the peculiar circumstances of a particular occasion; that is to say, the occasion of a passenger train unexpectedly meeting a freight train at a highway crossing. There is no averment that the corporation fixed the rate of speed for either of the trains as it was run; or that, according to the rules or time-tables of the corporation, the trains were expected or likely to meet at that place; or that such an emergency was likely to happen, and that it was the duty of the corporation to make provision therefor, by suitable rules or instructions to its servants and agents, and that this corporation had neglected to do its duty in this respect; or that the corporation, in view of the special emergency, had it in its power to reduce the speed of the particular train or to give special signals; or that the corporation ought to have provided a gate or flagman at the crossing, for the better protection of travellers; but the averment of negligence is simply that it was the duty of the corporation, in view of the position of the freight train, to reduce the rate of speed of the passenger train, and to give proper signals and warnings. The negligence which is specified is simply the neglect to do what ought to have been done in view of a

present emergency. These acts of negligence appear upon the face of the indictment to be acts of the servants and agents of the corporation, and not of the corporation itself. If the emergency called for a reduction of speed, and the giving of special signals and warnings, there is no presumption that the corporation forbade its servants or agents to make such reduction, or to give such signals and warnings; but it is plain that the omission to do such proper acts, if such omission existed, would *prima facie* be attributable to the servants or agents. If so, in order to hold the corporation responsible for their negligence, it would be necessary, under the statute, to aver and prove that such negligence was gross. In other words, an indictment, which sets forth only such acts of negligence or carelessness as are specified in the third count, must either charge them as acts of gross negligence or carelessness on the part of the agents or servants of the corporation, or must set forth other facts which will have the effect to make the corporation responsible as for its own negligence or carelessness.

If, passing from the averments of the third count, we look into the evidence by which it was sought to be supported, it appears that in point of fact the two trains were not expected to meet at the place where the loss of life occurred, and there was nothing to show that the corporation was responsible for the alleged failure to reduce the speed of the passenger train, or to give signals or warnings, except the evidence which tended to show an omission to do those acts on the part of its servants and agents, and the inference sought to be drawn from such omission.

It was suggested in the brief for the Commonwealth, that no motion was made to quash the indictment for informality, and that under the St. of 1864, *c.* 250, § 2, it was too late, upon the trial of the case, to raise the objection to this count. Under that statute, an objection for a formal defect, apparent on the face of the indictment, must be taken before the jury has been sworn. The objection to this count is not of that character. There is nothing on the face of this count which would enable the court, on inspection thereof, to determine what should be added or changed, to meet the case intended to be relied on. The statute on which the count is founded allows two kinds of negligence to be set forth: negligence of the corporation, and gross negligence

of its servants or agents. Apparently, the pleader intended to rely on the former; and in that case it is necessary to aver some substantive additional facts in order to show such liability. If, however, the negligence of servants or agents of the corporation was intended to be relied on, the omission of a direct charge that there was gross negligence or carelessness on their part cannot be considered as merely formal. In either case, the objection was well taken at the trial.

The next question to be considered is whether the fourth count is good. This count in substance sets forth that it was the duty of the corporation to give warning of the approach of the passenger train by ringing the bell or sounding the whistle upon the engine continuously for the space of eighty rods before reaching the crossing; that the corporation neglected to do so; that said Sanborn was killed by being run over, as set forth in the first count; and that the neglect to give such warning contributed to his injuries and death. This count is founded on the St. of 1874, c. 372, § 164, which provides, in substance, that if a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a place where the railroad crosses a highway upon the same level, and it appears that the corporation neglected to ring the bell or sound the whistle at the distance of at least eighty rods from the crossing, and thence continuously until the engine has passed the crossing, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment; with further provisions not material to be stated here. Under this section of the statute, which differs in its phraseology from the preceding section, the negligence of servants or agents of the corporation in respect to giving the required warnings is the negligence of the corporation. The statute makes no distinction between the one and the other, but holds the corporation responsible for the performance of the duty which is expressly enjoined by § 123 of the same chapter. The corporation must at all hazards see to it that this is done, and is punishable if it is not done.

But it is contended, on the part of the defendant, that § 164 only applies to cases of injury which do not result in death; and that it does not apply to cases of loss of life. This is the only

objection taken to the form of this count.    An examination of
the legislation preceding the section in question, and dealing
with the same subject, has brought us to the conclusion that
this objection is not tenable.    It may indeed be open to ques-
tion, whether the remedy by indictment extends to cases of
collision not attended with loss of life.    This question we have
not considered.    But we are all of opinion that this remedy
is not limited to such cases.    By the Gen. Sts. c. 63, §§ 97, 98,
provision was made for imposing a penalty on a railroad cor-
poration, if, by reason of its negligence or carelessness, or of
the unfitness or gross negligence or carelessness of its servants
or agents, the life of a passenger, or of any person not a pas-
senger, should be lost.    These provisions being in force, the St.
of 1862, c. 81, made special provision that every railroad corpo-
ration should have a bell and a steam-whistle upon each loco-
motive engine passing upon its road, and that such bell should
be rung or such whistle sounded at the distance of at least
eighty rods from the place where the railroad crossed a high-
way upon the same level, and thence continuously until the
engine had crossed the highway; but no penalty was provided
for an omission to give these warnings.    Then followed a stat-
ute which, like the preceding, stood by itself alone, the St. of
1871, c. 352, which is the foundation of the St. of 1874, c. 372,
§ 164, and is in substantially the same language; and it refers
in terms to the St. of 1862.    Its object was plainly to reënforce
that statute, by providing a special liability or penalty in case
of a neglect to give the warnings, and of an injury to which
such neglect contributed.    This particular act of neglect was
singled out; it was deemed to be of such significance as to call
for special legislation concerning it; and, while the corporation
was already liable to a penalty in case of a loss of life occurring
through any negligence or carelessness on its part, of whatever
nature, or through the unfitness or gross negligence or careless-
ness of its servants or agents, it was now also made responsible
in like manner, if from any cause whatever, whether through
negligence or otherwise, there should be an omission to give
these warnings when approaching a crossing at grade, and such
omission should contribute to the injury.    The later statute
gives a particular emphasis to the duty which is imposed, of

ringing the bell or sounding the whistle. It stamps the omission of this duty as sufficient to fix the responsibility of the corporation, without any inquiry into the circumstances under which such omission occurred. Prior to the enactment of the St. of 1871, the omission to ring the bell or sound the whistle was merely evidence of negligence on the part of the servants of the corporation. *Commonwealth* v. *Fitchburg Railroad*, 10 Allen, 190. Since its enactment, such omission fixes the liability of the corporation, irrespective of any question of negligence. The statutory provisions applicable to cases of loss of life have therefore received a distinct and substantive addition by the enactment of the statute in question, and we cannot assent to the argument for the defendant, that the only intention of the Legislature was to add provisions relating to mere injuries to person or property. It follows that the fourth count is good.

In order to support the averments of this count, it was necessary for the Commonwealth to prove an omission to give these warnings, as required by the statute. An indictment properly framed upon § 163 might be supported by proof of any facts duly averred, and satisfactory to the court and jury, to show negligence on the part of the corporation or gross negligence on the part of its servants or agents, even though the bell was rung and the whistle sounded continuously for eighty rods before the engine had reached the crossing. Under the averments of the third count, the jury may have been satisfied that such signals and warnings were given, but that the speed of the passenger train was not reduced, and that it was criminal negligence to omit to reduce the rate of speed, or to keep a proper and sufficient watch, care and foresight.

The presiding judge instructed the jury, that, if they should find, upon either one of these two counts, that the Commonwealth had sustained the burden which was upon it, they must return a general verdict of guilty. The result of this instruction is, that the verdict may have been rendered upon proof of facts charged in the third count, which would not be sufficient to support the fourth count; and so, the third count being now found to be bad, the verdict may have been rendered upon proof of facts not charged in, nor admissible in evidence under, the fourth count, which alone was good.

It is contended, on the part of the Commonwealth, that the practice as adopted in Massachusetts requires, or at least sanctions, the submission of the several counts of an indictment for one offence to the jury in this form.

It cannot be doubted that the two counts under consideration are for the same offence. Each count charges a loss of life of a person not a passenger, by being run over by the engine, at a grade crossing, and seeks to impose on the corporation the same penalty, and for the benefit of the same persons. Each count rests on an averment of negligence on the part of the corporation, or of its servants or agents. The difference in the details of the negligence charged does not have the effect to show that two offences are charged. And it is no doubt a general and beneficial rule of practice, that, where the same offence is charged in different counts of an indictment, the whole indictment may be submitted to the jury, with instructions, if they find the defendant guilty upon any count, to return a general verdict of guilty. But this rule is not applicable where one count of the indictment is bad, and the evidence applicable to such bad count is submitted to the jury with the rest, against the objection of the defendant. All such general rules of practice must yield, whenever it appears that the just rights of the defendant are insufficiently protected by them.

Ordinarily, no difficulty is found to arise. Where there are several good counts, and confusion is feared, it is indeed open to the defendant to move the court, before the commencement of the trial, to require the prosecutor to elect on which count or counts he will proceed, and to discontinue as to the residue; or such motion and order may be made upon the conclusion of the evidence for the Commonwealth; or the court, in its discretion, may instruct the jury to ascertain and determine, if they find the defendant guilty, on which count they so find, and accordingly to render a verdict of guilty on that count, and not guilty on the others; or it is competent for the court, and perhaps this is the best course to pursue generally, to give particular instructions to the jury as to the application of the evidence to the several counts, and that certain evidence can only be considered as bearing upon a certain count, and leave it to the jury to make a correct application of the evidence under such instructions, and

to return a general verdict of guilty, provided either count is proved. The latter mode is, in practice, usually found to be free from objection, and to secure a proper administration of justice.

But this course cannot advantageously be pursued when the objection is raised at the trial that either count in the indictment is insufficient in form; because in such case, if the whole indictment is submitted to the jury, with all the evidence applicable to each count, and a general verdict of guilty is rendered, and it proves that one count is bad, it cannot be known with certainty but that the jury have found their verdict upon the bad count, and upon evidence which is applicable to that count alone. If a general verdict of guilty is taken, without any objection being raised as to the sufficiency of either count, or any request for special instruction as to the evidence in support of either count, such general verdict will afterwards be deemed applicable to any count or counts which may be found to be sufficient. It is therefore a matter of necessity for the defendant, if he questions the sufficiency of either count, to ask appropriate rulings before the case is submitted to the jury; and when such question is made, and a general verdict of guilty is taken, and either count is afterwards found to be insufficient, there is danger that it may be necessary, as in the present case, to set aside the verdict. This exception to the general rule is recognized and stated in the elaborate and excellent exposition of the law upon this general subject, by Mr. Justice Dewey, in *Commonwealth* v. *Desmarteau*, 16 Gray, 1, 11, 17. The case of *Commonwealth* v. *Fitchburg Railroad*, 120 Mass. 372, holds that it is irregular, where there are several counts for the same offence, to take a verdict of guilty on more than one count. In that case, we have looked at the original papers, and an examination of the exceptions upon which the case was submitted to this court shows that no objection was raised at the trial before the jury to the sufficiency of either count of the indictment, and the decision upon that point is not of direct application to the present case.

Inasmuch as the fourth count only is found to be good, and as the general verdict of guilty may have been found upon proofs applicable only to the third count, the

*Exceptions are sustained.*