PATRICK J. GRIFFIN *vs.* JAMES H. HUSTIS, receiver.

Berkshire.   September 9, 1919. — November 25, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

</div>

*Negligence,* Railroad, Contributory, Imputed, In use of motor vehicle.  *Agency,* Existence of relation.  *Motor Vehicle,* License to operate.  *Evidence,* Violation of statute as evidence of negligence, Opinion: expert.  *Witness,* Cross-examination.

At the trial of an action against a receiver operating a railroad for personal injuries received at six o'clock on a Sunday morning, when a motor vehicle, hired by the plaintiff, was turned from the highway to avoid collision with a railroad train at a grade crossing and ran into a post, there was evidence tending to show that the view of the railroad track from the motor vehicle in the direction from which the train approached was limited by a tree covered hill to one hundred and eighty feet when the motor vehicle was one hundred feet from the crossing, that many motor vehicles used the crossing daily, that there were no gates at the crossing and no flagman until an hour after the accident, that the railroad train approached the crossing at a speed of thirty miles or more an hour and that the engine bell was not rung nor the whistle sounded.  *Held,* that a finding was warranted that negligence of the defendant contributed to cause the injury to the plaintiff.

At the trial of the action described above, it appeared that the injuries to the plaintiff were caused after St. 1914, c. 553, went into effect, that the plaintiff was sitting on the front seat of the motor vehicle as it approached the crossing, that the motor vehicle came almost to a stop between seventy-five and one hundred feet from the crossing, when the plaintiff looked both ways to see if a train was approaching and neither saw nor heard anything to indicate the approach of a train, that, when about fifty feet from the crossing, he again looked and saw the train approaching and shouted to the chauffeur.  *Held,* that the issue, whether the plaintiff personally was in the exercise of due care, was for the jury.

It appeared at the trial above described that negligence of the driver of the car

contributed to cause the accident and that he had been engaged with his motor vehicle by the plaintiff and others to drive them from Pittsfield to Camp Devens and back for a fixed price, and it was *held*, that there was no relation of principal and agent between the driver and the plaintiff and that the driver's negligence did not preclude recovery by the plaintiff by reason of the law of principal and agent.

At the trial above described there was evidence tending to show that the plaintiff entrusted himself to the care of the operator of the motor vehicle so far as the operation of the vehicle was concerned, but that he did not rely upon him to watch out for the approach of railroad trains at grade crossings, and it was *held*, that it could not be said as a matter of law that the negligence of the operator must be imputed to the plaintiff.

At the trial of the action above described, it further appeared that the chauffeur was operating the motor vehicle without an operator's license, and it was *held*, that, while, under St. 1915, c. 16, § 5, riding with the chauffeur under such circumstances was some evidence of negligence on the part of the plaintiff, it could not be ruled as a matter of law that it was negligence which contributed directly to cause the plaintiff's injuries so as to preclude him from recovering.

At the trial described above, in view of the rule stated in St. 1917, c. 246, § 3, to govern the driving of motor vehicles when approaching grade crossings, it was proper to exclude a question asked by the plaintiff of a skilled chauffeur, "As a chauffeur, when you approach a grade crossing where your view is obscured, what do you usually do? What is the proper practice with reference to stopping the car and making observations and then starting ahead?" the plaintiff offering to prove "that the proper practice is to slow down, take a view of the track, look and listen, make as certain as possible under the conditions that a train is not about to approach the crossing, and then start up at full speed in order that, if the engine stalls or there is any trouble with the car on the crossing itself, it may go across under its own momentum."

It was proper, at the trial above described, to permit the defendant, in cross-examination of one of the other occupants of the motor vehicle, to ask, "Can you give any explanation to the jury why, if that train was in plain view after it got one hundred and eighty feet from the crossing, you didn't see it until it was within twenty or twenty-five feet of the crossing?"

The fact that the chauffeur was driving without an operator's license was admissible in evidence at the trial above described.

TORT for personal injuries received when a hired motor vehicle driven by one Bordo ran into a post at the side of the Mohawk Trail near Charlemont when it was turned from the highway to avoid a collision with a railroad train on a grade crossing. Writ dated February, 1918.

In the Superior Court the case was tried before *Wait*, J. The questions referred to in the sixth numbered paragraph of the opinion were as follows:

Claude H. Tillotson, a chauffeur of fifteen years' experience, was asked, "As a chauffeur, when you approach a grade crossing

where your view is obscured, what do you usually do? What is the proper practice with reference to stopping the car and making observations and then starting ahead?" The question was excluded. The plaintiff's counsel then stated: "I wish to take an exception to the exclusion and make an offer of proof that the proper practice is to slow down, take a view of the track, look and listen, make as certain as possible under the conditions that a train is not about to approach the crossing, and then start up at full speed in order that, if the engine stalls or there is any trouble with the car on the crossing itself, it may go across under its own momentum."

Edward McGee, one of the passengers in the motor vehicle, was asked in cross-examination, subject to an exception by the plaintiff, "Can you give any explanation to the jury why, if that train was in plain view after it got one hundred and eighty feet from the crossing, you didn't see it until it was within twenty or twenty-five feet of the crossing?" He answered, "Well, when I looked, the car slowed up, and I looked up the track as far as I could see and there was no train in sight. I was sitting in the middle seat and I sat back and I suppose, as he said, I was talking to the man alongside of me until Mr. Griffin hollered and then it seems to me the train was right on us. It may have been two hundred feet away."

Other material evidence is described in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*J. M. Rosenthal,* (*W. A. Burns* & *J. B. Cummings* with him,) for the plaintiff.

*D. E. Hall,* (*C. N. Stoddard* with him,) for the defendant.

DE COURCY, J. The plaintiff was injured on Sunday morning, October 14, 1917, near a crossing at grade of the Boston and Maine Railroad over the highway known as the Mohawk Trail, in the town of Charlemont. He was one of a party of six who had engaged David Bordo, the owner of a seven passenger automobile, to take them from Pittsfield to Camp Devens and back for $30. They left Pittsfield at 4.30 A. M. At about six o'clock they were moving toward the crossing from the south, when a freight train approached from the east. Bordo, in order to avoid an imminent collision, turned his car off the road to the right,

and it came to a stop against a pole which was about ten feet from the first track. The plaintiff, who was riding on the front seat, was thrown forward and injured.

1. There was evidence from which it could be found that a view of the track toward the east was obstructed by a tree covered hill, so that one could see the track for a distance of only a hundred and eighty to two hundred feet when he was one hundred feet south of the crossing; that many automobiles passed over this route daily; that there were no gates at the crossing, and no flagman there until seven o'clock, or an hour after the accident; that the train approached at a speed of thirty or more miles an hour, and the engine bell was not rung nor the whistle sounded. This entitled the plaintiff to go to the jury on the issue whether negligence on the part of the defendant (who was operating the railroad) contributed to the accident at this dangerous crossing. St. 1906, c. 463, Part II, § 147. Walsh v. Boston & Maine Railroad, 171 Mass. 52, 58. Steverman v. Boston Elevated Railway, 205 Mass. 508.

2. As to whether the plaintiff personally was negligent. Apart from the due care statute (St. 1914, c. 553) there was affirmative evidence that when the automobile came almost to a stop, between seventy-five and one hundred feet from the crossing, Griffin looked to the right and the left to see if there was any train coming, and did not see nor hear anything to indicate the approach of one; and that when they had gone about fifty feet farther he again looked to the right, saw the engine and "hollered at the chauffeur there was a train coming." Considering also that the train was moving more than forty feet a second, that the plaintiff's view of the track was so limited, and that he had a right to rely somewhat on the skill and care of the chauffeur, the issue of the personal due care of the plaintiff was for the jury. Charles v. Boston Elevated Railway, 230 Mass. 536, and cases cited, page 540. Morrissey v. Boston & Maine Railroad, 216 Mass. 5.

3. Bordo plainly was negligent. He did not have a chauffeur's license, and his operator's license did not authorize him to operate his automobile for hire. St. 1909, c. 534, § 10. St. 1915, c. 16, § 5. Although the wet road made it difficult to stop the car, he approached this dangerous crossing at a speed of about eighteen miles an hour and did not notice the engine until his attention

was called to it by the plaintiff, when he had to turn to the side of the road in order to avoid running into the train. *Pigeon* v. *Massachusetts Northeastern Street Railway*, 230 Mass. 392. St. 1917, c. 246, § 3. On the undisputed evidence, however, Bordo was not the plaintiff's servant, but was an independent contractor. *Winslow's Case*, 232 Mass. 458. Accordingly the plaintiff would not be concluded by Bordo's negligence under the law of principal and agent. *Tornroos* v. *R. H. White Co.* 220 Mass. 336.

4. A closer question is whether the chauffeur's lack of due care is to be imputed to the plaintiff. Some of the plaintiff's testimony on cross-examination indicates "his voluntary, unconstrained, non-contractual surrender of all care for himself to the caution of the driver." *Shultz* v. *Old Colony Street Railway*, 193 Mass. 309, 323. Strongest against him are the following questions and answers: "Q. . . . Then is it fair to say that throughout this trip until the accident happened you placed your reliance on the chauffeur to look out for your safety in the driving of that car? Is that a fair statement? A. Yes, sir. — Q. Then your look to the right and left was a mere casual look because you were relying on the chauffeur to look out for you. Isn't that a fair statement? A. Well, I looked. — Q. That is as he stopped there and you, relying on him to look out for you, looked to the right and left in a casual way, didn't you? A. More than casual. — Q. You looked to see what there was to see, didn't you? A. I looked to see if there was any trains coming in either direction. — Q. But you were relying on Bordo to look out for you in the driving of that machine? A. Surely. — Q. Absolutely? That's correct. A. Why, yes, he had full charge of the machine. — Q. And you relied on him absolutely to look out for you in the driving of that machine, didn't you? A. Yes, sir."

But the jury could say that while the plaintiff relied upon Bordo so far as the operation of the machine was involved, he did not rely entirely upon Bordo to look out for the approach of trains. In fact the plaintiff not only looked out for them when the automobile was one hundred feet from the crossing, but he testified that he was positive the train was not in sight when he was eighty feet, seventy feet and sixty feet from the crossing. It was he who saw it approaching when they were within fifty feet, and

warned Bordo. He had a right to rely somewhat upon the experienced owner of the car to look out for the safety of himself and his passengers. On the whole evidence we can hardly say as matter of law that the plaintiff trusted his safety absolutely and wholly to the caution of Bordo, in such sense as to impute to him, and charge him with responsibility for, Bordo's negligence. *Randolph* v. *O'Riordon,* 155 Mass. 331. *Bullard* v. *Boston Elevated Railway,* 226 Mass. 262, 264. *Bailey* v. *Worcester Consolidated Street Railway,* 228 Mass. 477. It is not argued that he should have told the chauffeur not to turn to the side of the road, when he saw the approaching train. Apparently Bordo could not then stop the machine in time to avoid a collision; and the only alternative was to turn off the road to the right. The facts bring this case within *Bullard* v. *Boston Elevated Railway, supra,* and distinguish it from the Pigeon case, where the negligence of each plaintiff was a contributing cause of his or her injury.

5. The defendant further argues that the plaintiff is precluded from recovering by reason of St. 1915, c. 16, § 5, which provides that "No person shall employ for hire as a chauffeur any person not specially licensed as aforesaid." It is settled by *Conroy* v. *Mather,* 217 Mass. 91, that the plaintiff's violation of the provisions of this act is some evidence of negligence. But it could not be ruled that such negligence directly contributed to his injuries, so as to preclude him as matter of law from recovering. See *Pigeon* v. *Massachusetts Northeastern Street Railway, supra.*

6. The questions of evidence raised by the exceptions require but brief consideration. We find no reversible error in excluding the question to an alleged expert as to the proper practice in operating an automobile over a grade crossing. Assuming this to be a fit subject for expert testimony, St. 1917, c. 246, § 3, lays down the rule that governs: "Upon approaching any railroad crossing at grade the person controlling the movement of any self-propelled vehicle shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing." The question to the witness McGee, on cross-examination, as to what explanation he could give for not seeing the train sooner, was at least competent to test his credibility as a witness. Plainly it was competent to ask Bordo whether he had a chauffeur's license.

As there was error in directing a verdict for the defendant, the entry must be

*Exceptions sustained.*