WILLIAM A. CREELEY *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.     March 29, 1928. — May 25, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Negligence,* Contributory, Grade crossing of railroad.

At the trial of an action of tort against a railroad corporation for personal injuries received when a motor vehicle driven by the plaintiff was run into by a locomotive engine of the defendant at a grade crossing of the railroad with a public way where there were double tracks, it appeared that the plaintiff, as he approached the crossing, had a clear vision for at least four or five hundred feet in the direction the train came from when he was about five feet from the nearest rail, that he then was moving at a speed of two or three miles an hour and was able to stop his car within a foot, and that the car was struck as it was crossing the second line of tracks.    A motion by the defendant that a verdict be ordered in its favor was denied.    The jury found for the plaintiff.    The defendant alleged exceptions.    *Held,* that

(1) As a matter of law, the plaintiff was guilty of contributory negligence;

(2) Judgment for the defendant was ordered.

TORT for personal injuries.    Writ dated April 17, 1924.

In the Superior Court, the action was tried before *Brown,* J. Material evidence, a motion by the defendant and a special finding by the jury are described in the opinion.    There was a verdict for the plaintiff in the sum of $7,000.    The defendant alleged exceptions.

*F. N. Wier,* (*M. J. Cohen* with him,) for the defendant.

*P. F. Shaughnessy,* for the plaintiff.

PIERCE, J.    This is an action of tort to recover for damages resulting from a collision between an engine of the defendant and a Ford coupe in which the plaintiff was riding, at the Summer Street grade crossing, in Maynard, on December 13, 1923, at about 8:15 P.M.    It was admitted that Summer Street was a public highway.    The plaintiff's amended declaration states his cause of action in three counts, in substance, (1) Failure of the defendant to give the statutory signal provided for in G. L. c. 160, § 138; (2) Careless operation of the engine and line of railway by the defendant; that

no flagman nor gate tender was present or any warning given of the approach of the train, and that the engine was negligently driven at an excessive rate of speed; and (3) That by reason of the curve of the railroad at said crossing, and the buildings, structures, and objects upon and about the railroad near the crossing, the crossing was dangerous and the approach of the train could not be readily seen; and the engine was negligently driven at an excessive rate of speed and later than the usual time over the crossing without warning of any kind. The third count of the amended declaration contained also a general allegation of the negligence of the defendant and the due care of the plaintiff.

At the close of the evidence the defendant made a written motion to direct a verdict in its favor upon each count for the following reasons: (1) "There is not sufficient evidence to justify a finding that the defendant, its agents, or servants, was negligent"; (2) "On all the evidence the plaintiff was guilty of contributory negligence"; (3) "On all the evidence the plaintiff was at the time of the collision, guilty of gross or wilful negligence, which contributed to the injury"; and (4) "On all the evidence the plaintiff was at the time of the collision, acting in violation of the law and such unlawful act contributed to the injury." The motion was denied subject to the defendant's exception.

In the aspect most favorable to the plaintiff's contention, the jury were warranted in finding in substance the following facts: On the evening of December 13, 1923, at about five minutes after eight, the plaintiff in a Ford car drove out of Nason Street into Summer Street, in Maynard. The road is up hill from Nason Street to the railroad crossing, and the plaintiff had driven over it a number of times. He went up Summer Street at the rate of about four or five miles an hour until he got to the flagman's shanty, which was about ten feet from the nearest rail at the crossing; then he "almost stopped, came to a dead still," and "he looked and listened and could not hear anything." He went up Summer Street toward the crossing "just about as fast, a little faster than a person would walk." Before he got to the shanty a building "stood so high that it interfered with his looking

down the track," and he also "couldn't see on account of the shanty." When he was "practically twenty-one feet from the track" he slowed down "so that . . . [he] was just crawling along." He slowed down "back of the shanty." He looked both ways; up the track toward Acton when he got in front of the shanty. When the front of his car was four or five feet from the railroad crossing he looked up the track and could see past the "granary"— that is four or five hundred feet. He listened, heard no signal, "saw that the track was clear," started up to go over the crossing and went on at the same rate of speed, two or three miles an hour, perhaps at the rate of five miles an hour, until his auto was struck on the right side in the rear by the engine. The plaintiff used both his sight and hearing. His car did not make much noise and would not interfere with his hearing the train. When travelling at the rate of two or three miles an hour, he could stop his car within a foot and when going at the rate of five miles an hour he could stop his car within two and one half feet.

The jury were warranted in further finding, in substance, that there were gates at the crossing; that there was a crossing tender at the Summer Street crossing who, on December 13, 1923, remained on duty until 8:05 P.M.; that the plaintiff was familiar with the crossing and did not know that the gate tender was not on duty at the time of the accident; that the plaintiff knew there was a train due to come into Maynard from Boston at 7:20 or 7:30 P.M., but he did not know that train was late or that the train which struck his car was due at that time to pass over the crossing; that there was much travel over the crossing; that the statutory signals were not given; and that the train was running fast and at an excessive rate of speed while passing over the crossing, which was dangerous at all times by reason of the amount of travel, and especially so at night at a time immediately after the usual warning and the safeguard of the gates had been withdrawn and no one was there to warn travellers by flag or otherwise of the approach of trains. There was further evidence that a regulation of the railroad corporation required that trains should be stopped and a crossing flagged when the flagman

had gone, and that the engineer violated the rule "Because it has been the practice of not doing it."

As the case went to the jury there was abundant evidence on the first count that the statutory signals were not given as required by G. L. c. 160, § 138; and upon all the evidence it could not have been ruled that the defendant had proved by a preponderance of the evidence that the plaintiff was guilty of gross negligence. If the jury believed that the signals were not given, such failure warranted the jury in finding negligence on the part of the defendant, and a further finding that the absence of the statutory signals contributed to the injury which the plaintiff sustained. *Fahy* v. *Director General of Railroads*, 235 Mass. 510. *Griffin* v. *Hustis*, 234 Mass. 95.

Upon the second count, on the evidence the jury would be warranted in finding that the crossing was a dangerous one which required during the day, and at the time of the accident, gates, flagman or automatic signals to protect and warn travellers at the crossing against the passage of trains, particularly against the passage of delayed scheduled trains; and in finding that the absence of any form of warning was negligence on the part of the defendant. *Hubbard* v. *Boston & Albany Railroad*, 162 Mass. 132, 135. The disobedience of the rules by the engineer, if the jury found there were such, would warrant on the evidence a finding that the engineer was negligent and the further finding that his neglect contributed to the injury. *Griffin* v. *Hustis, supra,* page 98. *Harter* v. *Boston Elevated Railway*, 259 Mass. 433, 435, 436.

On the third count, which is a general count in negligence, the jury would be warranted in finding on the evidence which would support counts one and two negligence on the part of the defendant. *Hanks* v. *Boston & Albany Railroad*, 147 Mass. 495. *Hubbard* v. *Boston & Albany Railroad, supra. Hicks* v. *New York, New Haven & Hartford Railroad*, 164 Mass. 424, 426. *Griffin* v. *Hustis, supra.*

It is plain the judge could not have ruled rightly on the first count that the plaintiff was guilty of gross negligence or of any unlawful act which contributed to his injury. After a verdict for the plaintiff accompanied by a special finding

that the statutory signals were given, the case is before this court on the exceptions of the defendant to the refusal of the judge to allow its motion for a directed verdict.

The motion for a directed verdict on the second and third counts should have been allowed for the reason that, on his own testimony, the plaintiff was negligent, and that as matter of law his want of due care contributed to his injury. Although there was evidence at the time the motion was made which would warrant the jury in finding that the defendant had not given the statutory signals, and there was evidence that others than the plaintiff had not heard any ringing of bell or sound of whistle, it is not disputed that the plaintiff had a clear vision for at least four or five hundred feet in the direction the train came from when he was about five feet from the nearest rail, moving at a speed of two or three miles an hour and able to stop his car within a foot. It is obvious that any train which could strike his car as it was crossing the second line of tracks, a distance of approximately the length of his car, must have been within his vision when he looked from the point five feet from the nearest rail; and evident that if he did not see it he must have looked carelessly.   In this aspect the case is not distinguishable from *Lundergan* v. *New York Central & Hudson River Railroad*, 203 Mass. 460, 463, 464, and is governed by it and the cases therein cited.

*Exceptions sustained.*

*Judgment to be entered for the defendant.*