## CARVILLE v. NEW YORK CENT. R. CO.

### STAPLES v. SAME.

#### Nos. 2612, 2613.

Circuit Court of Appeals, First Circuit.
Nov. 4, 1931.

Joseph E. Casey, of Clinton, Mass. (C. Edward Rowe, of Athol, Mass., on the brief), for appellants.

Frank W. Knowlton and Brooks Potter, both of Boston, Mass., for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

These two cases arise out of a grade crossing collision between a locomotive of the defendant and a motortruck, in which both of the plaintiffs' intestates were riding. The cases were tried together to recover for their deaths; in the Staples Case there was also a count for conscious suffering. On defendant's motion there was a directed verdict for the defendant in each case. The question before us is whether the plaintiffs were entitled to go to the jury.

The suits were brought under General Laws of Massachusetts, c. 160, §§ 138 and 232, which read as follows:

"Section 138. Every railroad corporation shall cause a bell of at least thirty-five pounds in weight, and a steam whistle, to be placed on each locomotive engine passing upon its railroad; and such bell shall be rung or at least three separate and distinct blasts of such whistle sounded at the distance of at least eighty rods from the place where the railroad crosses upon the same level any public way or traveled place over which a signboard is required to be maintained as provided in sections one hundred and forty and one hundred and forty-one; and such bell shall be rung or such whistle sounded continuously or alternately until the engine has crossed such way or traveled place. * * : "

"Section 232. If a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a crossing such as is described in section one hundred and thirty-eight, and it appears that the corporation neglected to give the signals required by said section, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision * * * or, if the life of a person so injured is lost, to damages recoverable in tort, * * * unless it is shown that, in addition to a mere want of ordinary care, the person injured or the person who had charge of his person or property was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury."

Verdicts for the plaintiffs at a prior trial were set aside by the trial court on the ground that the overwhelming weight of evidence was against the plaintiffs' contention that the statutory signals were not given. Three witnesses gave the usual (rather negative) testimony of not hearing the signals, and several gave affirmative testimony to the contrary. The present record in that regard must be substantially like the former record.

The defendant mainly relies on G. L. Mass. c. 90, § 15, as follows:

"Every person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing. Whoever violates any provision of this section shall be punished by a fine of not less than ten nor more than fifty dollars."

And on Id., c. 85, § 31, as follows:

"No traction engine, with or without trailers, and no motor truck which with its load weighs more than four tons shall be

operated upon any public way at a speed greater than fifteen miles an hour; and no vehicle which with its load weighs more than four tons shall travel upon any such way at a speed greater than four miles an hour when equipped with metallic tires, nor greater than twelve miles an hour when equipped with tires of rubber or other similar substance."

The accident occurred about 8:15 on the morning of January 14, 1929, near South Athol, Mass. The train, consisting of an engine and a single car, with four passengers only, left Athol for Springfield at 8:03 that morning. It was a clear, cold morning, with a few inches of snow on the ground. The grade of the track at the crossing and about 250 feet back towards Athol was level. Beyond that, towards Athol, it was slightly ascending. A cut with an embankment on both sides exists 520 feet northerly from the center line of the crossing. From this cut towards the crossing the train on the track was plainly visible from the highway on which the plaintiffs' intestates were approaching the crossing. This highway slopes towards the crossing at a very slight grade.

At a point on the highway 320 feet from the crossing, 570 feet of the railroad track north of the crossing was visible. Standing on this road 100 feet back from the crossing one could see an object on the track 638 feet up the track from the center of the crossing. At a point 20 feet from the track at the crossing he could see an object 744 feet distant from the crossing. At 50 feet he could see 689 feet up the track.

The photographs taken the day after the accident, as well as the parol evidence, show that for about 300 feet from the crossing the occupants of the truck had a clear view of the approaching train. The speed of the train is indicated at 30 to 40 miles an hour. At 40 miles an hour the train would cover the distance from the end of the cut, 525 feet, in eight and one-half seconds.

The truck with its load weighed 16,160 pounds, over 8 tons. Its maximum legal speed was therefore only 15 miles an hour, under the statute, supra. This truck was a cumbrous one of peculiar construction belonging to the New England Telephone & Telegraph Company. Its exhaust pipe went up back of the cab and extended about 2 feet beyond it to the right-hand side. Thus placed, the exhaust made an unusually loud putt-putt sound. The cab had curtains over the door with isinglass in it, but at the time of the accident it was closed, and the intestates wore sheepskin coats with their collars turned up.

The evidence indicated that the truck was first seen by the fireman and another witness on the train when about opposite an apple tree 184 feet from the crossing; that the train was then out of the cut. The truck and the engine reached the crossing at the same instant; the locomotive picked up the truck and carried it to a point some distance beyond the crossing. Both occupants died without speaking.

If we assume that, on the issue of failure to give the statutory signals, there was more than a scintilla of evidence for the plaintiffs, County of Marion v. Clark, 94 U. S. 278, 24 L. Ed. 59; Evans v. Ely (C. C. A.) 13 F.(2d) 62, 64, we are forced to the conclusion that, on the undisputed and indisputable evidence, the only rational conclusion is that the intestates did not observe the injunction of General Laws, c. 90, § 15.

On this record, the case is legally indistinguishable from Anthony v. B. & M. R. R. Co. (Mass.) 177 N. E. 564, also a grade crossing accident case. On page 565 of 177 N. E., the court said:

"The only rational conclusion from the entire evidence is that the train was in plain sight when he was within thirty-five feet of the crossing. If he did not see it at that time he either looked carelessly or did not look at all. He drove on the crossing, paying no attention to the imminent danger which he ought to have guarded against and which, with proper care, he could have avoided. This was negligence on his part. Creeley v. Boston & Maine Railroad, 263 Mass. 529, 161 N. E. 584.

"The testimony of this plaintiff plainly shows that as he approached the railroad crossing he did so in violation of G. L. c. 90, § 15, whereby it is required that 'Every person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate, and shall proceed cautiously over the crossing.' If it be assumed that the statutory signals required by G. L. c. 160, § 138 were not given, and if it could not have been ruled that the operator of the truck was guilty of gross or wilful negligence, contributing to his injury, within the meaning of G. L. c. 160, § 232, he is precluded from recovery because of his violation of G. L. c. 90, § 15. The case at bar cannot be distinguished in principle from Fortune v. New York, New Haven & Hartford Railroad, 271 Mass. 101, 170 N. E. 923.'"

Compare also Jones v. N. Y., N. H. & H. R. R. Co. (Mass.) 175 N. E. 487.

If the plaintiffs' intestates had looked, they would have seen the train. To "proceed cautiously over the crossing" was the mandate of the statute, supra. To proceed without looking, and within plain sight of the approaching train, was to violate the statute.

Which one of the plaintiffs' intestates was operating the truck does not appear. In any aspect it is immaterial. The driver had charge of the other's person, and was plainly acting in violation of the law. Morel v. N. Y., N. H. & H. R. Co., 238 Mass. 392, 394, 395, 131 N. E. 175.

Defendant's motion to dismiss the appeal because not seasonably taken, is denied. The original entry of judgment as of February 7, 1931, was an error. The date on which the judgment was in fact entered was February 17, 1931, and the record was merely amended to conform to the fact. The appeal was seasonably taken.

But we are constrained to hold that, on the plain and indisputable facts, the ruling in defendant's favor must be affirmed.

In each case the judgment of the District Court is affirmed, with costs.