GUISEPPE MANNINO *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   April 5, 1937. — March 29, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Negligence,* Grade crossing, Railroad.   *Practice, Civil,* Special questions to jury.

A negative answer by a jury to a special question which, under the judge's instructions, was in effect whether a collision between an automobile and a railroad locomotive at a grade crossing was due to negligence of the corporation in failing to give the signals required by G. L. (Ter. Ed.) c. 160, § 138, "whether that provision of the statute was carried out," established that the signals were given, but left open the issue of the corporation's negligence aside from the matter of signals under a count at common law alleging negligence generally.

Evidence as to the layout of a railroad grade crossing and its approaches and other conditions there, with the established fact that the statutory signals were sounded on a locomotive which struck an automobile on the crossing, did not show that operation of the train over the crossing at sixty miles an hour at a time when the crossing gates were raised and the crossing tender was absent was negligent.

TORT.   Writ in the Superior Court dated February 12, 1932.

The action was tried before *F. T. Hammond,* J.

*H. Lawlor, (J. F. Connolly* with him,) for the plaintiff.

*J. DeCourcy,* for the defendant.

DONAHUE, J. The plaintiff was injured when an automobile, operated by another, in which the plaintiff was riding, was struck by the locomotive of a passenger train of the defendant at a grade crossing in the town of Ayer. The plaintiff's declaration contained a count at common law for negligence in the operation, control, management and inspection of the train and a count under the provisions of G. L. (Ter. Ed.) c. 160, §§ 232, 138, for the failure to sound the whistle or ring the bell on the locomotive, as required by the statute, before crossing a public way.

The judge submitted to the jury three questions: "1. Was the accident due to the negligence of the defendant?" to which the jury answered "No"; "2. Was the plaintiff guilty of negligence contributing to the accident?" to which the jury answered "No"; and "3. What were the plaintiff's damages?" to which the jury answered "450." On the return of these answers by the jury, the judge directed a verdict for the defendant on each count of the declaration. The parties stipulated that if on exceptions taken by the parties this court should be of the opinion that the plaintiff was entitled to go to the jury on either count, judgment should be entered for the plaintiff for the amount of damages found by the jury.

The following facts were not in dispute: The accident happened at about half past six on a Sunday morning in November, shortly after sunrise. The automobile was travelling in a southwesterly direction on a highway which crossed diagonally four tracks of the defendant, running east and west. The train was proceeding in an easterly direction on the third track which would be reached by the automobile in traversing the crossing. As the automobile approached the crossing there were obstructions to the view the occupants had of the tracks at their right, which was the direction from which the train came. There was at the right a crossing tender's "shanty" about ten feet square located six feet from the first rail, that is, the most northerly rail of the first track, and nearby there were, on the railroad right of way, a telegraph pole, a post which carried a sign warning travellers on the highway, and a

standard supporting the crossing gates. At points on the highway some distance from the tracks, trees and an elevation of land obstructed the view. The crossing gates were not lowered, and no crossing tender was there at the time of the accident. Between the hours of seven o'clock in the morning and one o'clock on the following morning a tender was regularly stationed at the crossing. At a point in the center of the highway, seven feet north of the first rail of the first track, there was an unobstructed view of the tracks to the west for the distance of a quarter of a mile. The distance from the first rail of the first track to the first rail of the third track, on which the train came, was thirty-three feet.

There was testimony that the automobile was stopped at a point twenty to twenty-five feet before reaching the crossing. There the plaintiff and the operator of the automobile looked and listened. At that point their view of the tracks at the right was entirely obstructed. They heard no whistle or bell or sound of an approaching train. The automobile then proceeded at the rate of speed of six or seven miles an hour. Although before it reached the first rail of the first track there was an unobstructed view of the tracks to the right for the distance of a quarter of a mile, the operator, who testified that at that point he looked to the left and to the right, saw no train. Without stopping he proceeded to cross. He testified that he first saw the train when the automobile was twenty feet from the first rail of the third track, and thirteen feet beyond the first rail of the first track. He testified that the train was going at the rate of fifty-eight or sixty miles an hour, that he tried to stop, but the automobile skidded three or four or five feet and collided with the locomotive, and that the train stopped one hundred feet from the crossing.

There was evidence introduced by the defendant to the effect that the train was proceeding at the rate of twenty to thirty miles an hour at the crossing; that it stopped without the use of emergency brakes within a train length, which was something over four hundred feet; that the bell was ringing continuously from a point a quarter of a mile

west of the crossing; that the whistle was sounded at that point; and that, because of other crossings east of the one in question, the whistle was sounded almost continuously between the point a quarter of a mile away and the crossing.

The case was submitted to the jury, not for the finding of verdicts on the two counts of the declaration, but for answers to the questions of the defendant's negligence, the plaintiff's negligence and the plaintiff's damages. At the outset of his instructions the judge stated that the case as it would be submitted to the jury was based on the claim set out in the first count of the declaration, which alleged a common law liability of the defendant for negligence of its employees in operating the train. The instructions thereafter given by the judge narrowed the issue which the jury were called on to decide in answering the question whether the defendant was negligent. The jury were told: "the question for you to determine is whether the railroad company was negligent in its employees not giving any signal, by whistle or bell, of the approach of this train." He instructed the jury correctly as to the requirements of the statute with respect to sounding a whistle or ringing a bell in approaching a highway crossing and said: "The question in dispute here is as to whether that provision of the statute was carried out." No exception was taken by the plaintiff to this limitation of the issue under the first question submitted to the jury. On conflicting evidence the jury were warranted in finding that there was compliance with the statutory requirements as to giving a signal by bell or whistle. The negative answer by the jury to the question whether the defendant was negligent was, by reason of the instructions given, necessarily a finding that the bell or whistle signals which the statute required were given. The failure to give such signals in approaching a highway crossing creates a liability in a railroad company, irrespective of negligence, if the special defences set out in the statute are not established. *Commonwealth* v. *Boston & Maine Railroad,* 133 Mass. 383, 390. *Sponatski's Case,* 220 Mass. 526, 530. G. L. (Ter. Ed.) c. 160, § 232. The failure to give the statutory signals has another effect.

Such a failure to perform the duty imposed by the statute is also evidence of negligence. *Giacomo* v. *New York, New Haven & Hartford Railroad,* 196 Mass. 192, 195. *Griffin* v. *Hustis,* 234 Mass. 95, 98. *Commonwealth* v. *Boston & Maine Railroad,* 133 Mass. 383, 391. What was here settled, by the jury's answer to the first question submitted, was that the defendant or its employees were not guilty of the negligence of failing to give the statutory signals.

The establishment of the fact that the statutory signals were properly given does not, however, by itself, support the direction of a verdict for the defendant on the first count of the declaration, which alleges generally negligence of the defendant, its servants or agents, in the operation, control, management and inspection of its train. Compliance by a railroad company with the mandatory statutory requirements of sounding a whistle or ringing a bell when a train is approaching a highway crossing does not relieve the company or its servants or agents from taking other precautions which are reasonably necessary for the protection of travellers. *Hubbard* v. *Boston & Albany Railroad,* 162 Mass. 132, 135. *Commonwealth* v. *Boston & Worcester Railroad,* 101 Mass. 201, 202. It is necessary therefore to consider, with respect to the direction of a verdict for the defendant on the first count in the declaration, whether there was here evidence which would warrant a finding by the jury that the defendant was negligent in not taking precautions, other than the giving of the statutory signals, for the safety of travellers at the highway crossing in question, at the time of the accident.

The judge, in his instructions with respect to the answer to be given to the first question submitted, told the jury not to consider the facts that the crossing gates were not down, that there was no gateman there, that there were obstructions to the view on the defendant's right of way, or the speed of the train, or any conduct of the engineer or fireman other than conduct with respect to the giving of signals. In effect he told the jury that the evidence as to those matters did not warrant a finding that the defendant was negligent. To this no exception was taken by the

plaintiff. We think that there was no error in this instruction or in the later direction of a verdict for the defendant on the first count of the declaration.

Whether precautions other than the giving of the signals required by the statute should be taken by a railroad company or its employees for the protection of travellers at a particular highway crossing, at a particular time, depends upon the circumstances then and there existing which were known or reasonably should have been anticipated by the company or by its employees. *Shaw* v. *Boston & Worcester Railroad*, 8 Gray, 45, 49–50. *Bailey* v. *New Haven & Northampton Co.* 107 Mass. 496. *Trask* v. *Boston & Maine Railroad*, 219 Mass. 410, 414.

The evidence, viewed in its aspects most favorable to the plaintiff, does not show the crossing in question to be one especially dangerous to travellers on the highway. Compare *Hubbard* v. *Boston & Albany Railroad*, 162 Mass. 132, 133; *Hicks* v. *New York, New Haven & Hartford Railroad*, 164 Mass. 424, 425; *Creeley* v. *Boston & Maine Railroad*, 263 Mass. 529, 531. So far as appears it was not located in a thickly settled neighborhood. The accident happened in the daytime. Compare *Creeley* v. *Boston & Maine Railroad*, 263 Mass. 529, 531; *Trask* v. *Boston & Maine Railroad*, 219 Mass. 410, 414. A sign warning travellers, and other structures in the vicinity, gave adequate notice to persons approaching on the highway of the existence of a railroad crossing. *Chase* v. *New York Central & Hudson River Railroad*, 208 Mass. 137, 141. There was in the vicinity no curve in the highway or in the tracks. There were obstructions to a view of the tracks at the right of a traveller approaching the crossing from the direction from which the plaintiff came. But before reaching the first rail of the first of the four tracks which traversed the crossing, such a traveller had an unobstructed view to the right for the distance of a quarter of a mile. The railroad location was eighty feet wide at the crossing. The first rail of the first track was two rods from the first rail of the third track, on which the train came. From the point where there was a full view of the tracks there was ample oppor-

tunity for a traveller to ascertain seasonably if there was danger from a train coming on that track and to avoid such danger.   The extent of travel on a highway over a railroad crossing is an element generally given consideration in determining whether adequate precautions have been taken by a railroad or its employees for the protection of travellers.   *Creeley* v. *Boston & Maine Railroad,* 263 Mass. 529, 530.   *Trask* v. *Boston & Maine Railroad,* 219 Mass. 410, 414.   *Giacomo* v. *New York, New Haven & Hartford Railroad,* 196 Mass. 192, 194.   *Hubbard* v. *Boston & Albany Railroad,* 162 Mass. 132, 136.   *Commonwealth* v. *Boston & Worcester Railroad,* 101 Mass. 201, 203.   There was here no evidence as to the extent to which the crossing was used by travellers on the highway at the time of day when the accident happened, or at any time of day.

The first count in the declaration alleged negligence in the operation, control, management and inspection of the train.   The evidence fails to show conditions at the crossing known or reasonably to be anticipated which required that the train be operated differently than it was at the time of the accident.   There was not sufficient evidence to warrant the finding that the railroad company or its employees on the locomotive were negligent in the operation of the train or in the failure to take precautions for the safety of travellers at the crossing, other than the giving of the signals required by the statute.

The single exception of the plaintiff to the instructions given by the judge was "to that part of the charge that involves that question as to the rule about sounding the whistle."   In cross-examination of the engineer he stated that "the rules" required the blowing of the whistle, "two long and two short ones."   That is all that appears in the record respecting any rules of the defendant as to blowing the whistle.   The judge charged the jury fully with respect to the giving of the statutory signals but he said nothing as to any rule of the company requiring the blowing of the whistle.   We have examined the instructions to the jury dealing with the matter of blowing the whistle and find no error.

The plaintiff argued before us exceptions taken at the conclusion of the charge to the refusal of the judge to grant his sixth, seventeenth, eighteenth and nineteenth requests for rulings. Since the jury specifically found that the plaintiff was not negligent, we need not consider the eighteenth and nineteenth requests, which dealt with the matter of the care which the plaintiff was required to exercise. The other two requests were drawn on the theory that the broad question of negligence was to be submitted to the jury, whereas the jury in fact were permitted to decide only the narrow question whether the defendant was negligent in failing to give the signals required by statute. The sixth request was to the effect that under count 1 of the declaration the jury might find for the plaintiff if there was any negligence in the operation of the train and the sounding of any whistle which was required by a rule of the company, outside of its duty to give the statutory signals. This permitted a finding for the plaintiff even if he was guilty of contributory negligence. Furthermore, it assumes a rule of the company as to sounding a whistle. Such a rule was not offered in evidence. The only evidence respecting the existence of a rule was as to the manner a whistle should be sounded. Nothing in the evidence showed a rule of the company requiring a whistle to be sounded at a particular time or place. The seventeenth request was to the effect that it was a question of fact whether other precautions in addition to giving the statutory signals should have been adopted by the defendant to prevent a collision and whether reasonable care was taken to prevent it. This was not pertinent to the narrow question submitted to the jury on the first count or to the second count based on the failure to give the statutory signals. As earlier pointed out, the evidence would not support a finding that any additional precautions were required. There was no error in the refusal of the judge to give these requests.

The judge directed a verdict for the defendant on the second count of the declaration after the jury had found that the defendant was not negligent. Under the instructions given by the judge to which the plaintiff did not

except, that conclusion could only be reached after finding as a fact that the signals required by the statute were given. By the return of a negative answer to the question whether the defendant was negligent, it became by reason of the instructions given an established fact in the case that the signals were given as the statute required. The basis of the liability of the defendant asserted in the second count is the failure of the employees of the defendant to give such signals. Since it has been established by the finding of the jury that the signals were properly given, there was no error in the direction of a verdict for the defendant on the second count of the declaration.

*Exceptions overruled.*